## BAGNALL vs. THE STATE.

*Taxation of National Banks — Chap.* 136, *Laws of* 1868.

1. Shares in national banks located in this state are subject to taxation by the state, although shares in the state banks are not taxed *eo nomine.* The decision in *Van Slyke v. The State* (23 Wis. 655), adhered to.
2. Chapter 136, Laws of 1868, which provides " for the re-assessment and collection of delinquent taxes of 1865 and 1866, on the shares of national banks in this state," is valid.

3. The tax levied by law upon the *capital* of the state banks is a full *equivalent* to that levied upon the *shares* of the national banks, under said chapter; and adequate provision is made by it to prevent the rate of taxation upon those shares being greater than upon other moneyed capital in this state.

4. An averment that the rate of taxation upon plaintiff's shares in a national bank in this state was greater than that assessed for " state tax " upon other moneyed capital in the hands of individual citizens of the city in which plaintiff resided, *held* insufficient to show the tax illegal; it not appearing that such rate was greater than that imposed upon such other moneyed capital for state, county and municipal purposes.

Chapter 136 of the General Laws of 1868 provides, among other things, as follows : •

"Section 1. It shall be the duty of the state treasurer to transmit, as soon as practicable, to the assessor of every city, ward or town in this state, in which is located any banking association organized under a law of the United States, a statement prepared from the best information within his reach, showing the date of the organization of such bank, and the amount of its capital stock, and the names of the persons who were shareholders in such banks on the 5th day of June, 1865, and on the 5th day of June, 1866, and the number of shares held then by each, and stating whether the taxes, due to the state for the year 1865 or 1866, or for both of said years, remain unpaid.

"Section 2. It shall be the duty of the assessor of every such city, ward or town to include in the valuation of the personal property for the year 1868, of any person or corporation (whether residing or located in or out of such city, ward or town), the shares of such banking association which were owned by such person or corporation at the time fixed by law for the assessment of personal property in each of the years for which taxes thereon appear by said statement of the state treasurer to remain unpaid, and to assess such shares at their true cash value at such time; but such shares shall in no case be assessed at more than their par value."

Section 3 provides in what manner the assessor shall ascertain the names of the shareholders, their places of residence, the number of shares held by each, etc. Section 4 provides that "such assessor shall inquire into and ascertain the true cash value of such shares, at the time fixed by law for the assessment of personal property for taxation during such of said years 1865 and 1866, for which the taxes on said shares appear by the statement of the state treasurer to be unpaid;" and to enable him to do this, it further provides for an examination on oath of any officer or manager of the association, or any other person supposed to possess the necessary information, and imposes a penalty upon any person refusing to submit to such examination.

"Section 5. It shall be the duty of the clerk of the city, village, or town in which any bank is located, to set down on the proper assessment roll, opposite the names of each owner of such shares, for each of said years therein mentioned separately, the same per centum of rate of tax which was in such year assessed and levied upon other moneyed capital in the hands of individual citizens of the state, in such city, ward, or village, or town, and no greater rate: *provided, however*, that the per centum or rate so to be set down shall not in any case exceed the rate of one and one-half per centum upon the assessed value of such shares; *and provided further*, that if the organization of any such bank took place after the first day of January in either of said years, then the tax so to be set down for such year shall be reduced so as to bear such proportion to the rate above provided for as the part of the year unexpired at the date of its organization bore to the whole year."

Section 6 provides that "the town, city or village collector shall collect the taxes so levied upon such shares, in the same manner as taxes upon other personal property are by law to be collected," etc. Section 13 declares that "the value of bank shares assessed under this act

shall not be included in the basis for apportionment of taxes." And section 14 provides that "any shareholder in any national bank or banking association in this state may, at any time before the first day of May, A. D. 1869, pay to the state treasurer the amount of tax required to be levied and collected upon his share or shares in such association, and may, immediately after such payment, bring and maintain an action against the state in the supreme court thereof, to recover back the money so paid, with interest from the time of payment, at six per cent., in which action the payment so made shall be taken and deemed to have been compulsory," etc., etc.

The plaintiff was a shareholder in a banking association in Milwaukee, organized under the national banking law ; and in 1868 he paid taxes re-assessed against his shares under the act above cited, for the years 1865 and 1866, and then brought the present action in this court, under the provisions of section 14. The complaint was demurred to, as not stating a cause of action.

*Gregory & Pinney,* for the plaintiff,* contended that this state could not, under ch. 400, Laws of 1865, or ch. 136, Laws of 1868, lawfully impose and collect, or re-assess and collect, the taxes in question. In support of this view they maintained, 1. That said acts are not in conformity with the *restrictions* imposed by section 41 of the national banking act: (1) Because, under our laws (R. S. ch. 71, sec. 20), while each state bank is required to pay a semi-annual tax of three-fourths of one per cent. on the amount of its *capital stock*, the *shares* are expressly exempted from taxation. *Van Allen v. The Assessor*, 3 Wall. 573 ; *Bradley v. The People*, 4 id. 459 ; *Wright v. Stilz*, 27 Ind. 338 ; *Hubbard v. Supervisors, etc.*, 23 Iowa, 130 ; *People v. Barton*, 44 Barb. 148. (2) Because said section 41 restricts the states to a particular *mode* of taxing shares of

* The brief of plaintiff's counsel is very full and elaborate ; and only an outline of its chief points can here be given.

national banks, viz.: by including them in the *valuation of the personal property of 'the shareholder*— this being the mode expressed in the act, and its expression being an exclusion of all other methods. *Markoe v. Hartrauff*, 15 Am. Law Reg. 489. (3) Because it was necessary to include the valuation of shares in the national bank in the *basis* for the apportionment of taxes, in order to comply with that provision of said section 41 which limits the rate of taxation on these shares to the rate assessed on other moneyed capital in the hands of individual citizens of the state. (4) Because the national banks pay a franchise tax to the federal government, which is the equivalent of the franchise tax paid by the state banks to the state ; and, therefore, if the shares of the national banks are further taxed by the state, while it does not tax shares in the state banks, precisely that unjust discrimination against the former takes place which congress endeavored to prevent. As to the difference between a franchise tax paid by the corporation, and a tax on shares owned by individuals, counsel cited A. & A. on Corp. 540, 607, 608 ; 5 Gill., 231 ; *Society for Savings v. Coite*, 6 Wall. 606 ; CLIFFORD, J., in *Provident Institution v. Massachusetts*, id. 623 ; *Bligh v. Brent*, 2 Younge & C. 268, 294 ; *Rex v. Hull Dock Co.*, 1 Term, 219 ; *Lincoln v. Barton*, 44 Barb. 156 ; *Van Allen v. The Assessor*, 3 Wall. 588. And to the point that a statute imposing a tax, or restraining the power of taxation, must be complied with strictly and in all its essential provisions, and that "it will not do to adopt a course not authorized by the statute, upon the principle that it is *equivalent* to the requirements of the statute," they cited *Rathbun v. Acker*, 18 Barb. 393 ; *Wheeler v. Chicago*, 24 Ill. 107 ; *Thurston v. Prentiss*, 1 Man. (Mich.) 194 ; *Sewall v. Jones*, 9 Pick. 414 ; *Moseley v. Tift*, 4 Fla. 402 ; *Hale v. Burton*, Dud. (Ga.) 105 ; *Comm'rs of Poor v. Gains*, 3 Brev. 396 ; Dwarris on Statutes, 743, 749, 767 ; 2 Story, 369.

2. That the statutes in question are in conflict with section 1 of article 1 of our state constitution, which provides that "the rule of taxation shall be uniform." 3. That so long as the state legislation on this subject is not in conformity with the national banking act, the state is excluded from the right of taxing shares in the national banks, and they remain *exempt* from state taxation. 4. That the authority to pass an act to *re-assess* a tax for a given year depends upon the existence of an authority to impose or collect it *in the first instance;* and it is confined to cases where there has been a failure to exercise an already existing power in that respect, or where an attempt has been made to exercise it, and the tax is made void at law by reason of a defective execution of the power. *Billings v. Detten,* 15 Ill. 218 ; *McDaniel v. Correll,* 19 id. 228 ; *Marsh v. Chestnut,* 14 id. 223 ; *Denny v. Mattoon,* 2 Allen, 361.

*J. C. Spooner,* Assistant Attorney General (with *Spooner & Lamb,* of counsel), for the state.

COLE, J. It appeared quite clear to me on the argument, that all the important questions raised by the demurrer to the complaint in this case — which were so fully and ably argued by the counsel for the plaintiff — had already been decided adversely to his views in the case of *Van Slyke v. The State of Wisconsin* (23 Wis. 655), and that, unless we were prepared to change that decision, the demurrer must be sustained. So, in fact, the counsel himself seemed to regard the effect of that decision, and hence he combatted the main propositions in that case with all the vigor of his reasoning. And he contended that this court in that decision had wholly misconceived the true intent and meaning of the 41st section of the national banking law, which permits taxation by state authority of the shares of national banks, and had also misapprehended the decisions of the su-

preme court of the United States, giving a construction to that section. He therefore invited the court to a reexamination of the grounds upon which the Van Slyke case was decided, being convinced, as he said, that a careful review of the whole subject would satisfy us that the decision made in that case ought not to stand. I have accordingly reëxamined the questions involved in that case with all the care and reflection I have been able to bestow upon them, and while candor compels me to admit that I am not entirely free from doubt as to how they should be decided, yet I am inclined to the opinion that the conclusions there reached are correct, for the reasons stated by the chief justice in his opinion. I am aware that some of the state courts have taken a different view of the effect of the decisions of the supreme court of the United States upon this subject from that held by this court in the Van Slyke case. They seem to suppose that the supreme court has really decided that where the state law does not provide for the taxation of the shares, *eo nomine*, of the state banks, there can be no taxation of the shares of the national banks, although, by the method of taxation resorted to by the state, the tax against the shares in the national banks does not exceed that imposed in some form upon the state banks or their stockholders. But I do not so understand those decisions. And it seems to me a little singular, if the supreme court intended to decide that congress had provided a certain definite mode for taxing the shares in the national banks, and that the state could only tax those shares where by its laws the shares, *eo nomine*, in the state banks were also taxed, that it did not say this in so many words, without resorting to any course of reasoning to show that a tax on the capital of the state banks was not an equivalent to a tax on the shares, inasmuch as the capital of the state banks might consist of the bonds of the United States which are exempt from state taxation. For it would be sufficient to

say, if this were really the view of that court, that, as the state law does not provide for taxing the shares in the state banks, there can be no taxation of the shares of the national banks. This would be the most natural way of disposing of the question. In the cases which came before that court, where the tax was imposed on the capital of the state banks, those banks were entitled to a deduction of that portion of their capital invested in United States securities. Hence it was easy to see that this tax on the capital was not an equivalent for a tax on the shares of the stockholders, as the supreme court say in more than one of the cases. But in this state every state bank, in consideration of the franchises or privileges granted by the banking law, is required to pay the state treasurer a semi-annual tax of three-fourths of one per centum on the amount of the capital stock of the bank, regardless of the fact whether its capital is invested in United States securities, or whether a portion of its capital has been lost in business. This tax is paid on the "capital stock" by these corporations, as a compensation for the special privileges granted them by the state, and as a fair equivalent for the exemption from local taxation on their property. *State Bank v. The City of Milwaukee*, 18 Wis. 281. And this constitutes the fundamental distinction between a case arising under our state banking law, and one arising where the tax is upon the capital stock of the state bank, and the bank is entitled to a deduction from its capital stock of the amount invested in United States securities. For wherever a tax of a given percentage is imposed upon the capital stock of a state bank, and that capital is liable to be diminished on account of a portion or all of it being invested in United States securities, and the same rate is imposed upon the shares of national banks, there it is plain the taxation is not equal or equivalent. The latter species of property is subjected to a greater rate of taxation than the for-

mer.    And it was doubtless to prevent this unwise, unjust and improper discrimination against the national banks, that the provisos in the 41st section were enacted by congress.    But where the law is such that the rate imposed on the shares in the national banks can in no possible event exceed the rate imposed on the state banks, the object of the second proviso is certainly fulfilled.

In this state, the taxation at the rate of one and one-half per cent upon the shares in the national banks in no contingency exceeds, while it doubtless in many cases falls short of, the taxation upon the state banks.    What injustice, then, is done the owners of shares in the national banks, if the tax on the state banks is imposed upon the capital stock, instead of being imposed upon the shares of these banks?    The variance in the mode of taxation is of no practical importance, since in either case the tax is substantially the same, and must always be equal to, if it does, not exceed, the taxation imposed previous to 1867 upon the shares in the national banks. But this whole field of discussion is so fully gone over by the chief justice in his opinion in the Van Slyke case, that further remarks upon these points would seem quite unnecessary.

It is objected that by the laws of this state the owner of shares in national banks was not required to include them in the valuation of his personal property.    A bare reference to chap. 400, Laws of 1865, and chap. 136, Laws of 1868, will show that this is a mistake.    It is said, however, that these statutes fix an arbitrary value for all shares.    The law of 1868 makes it the duty of the assessor to inquire into and ascertain the true cash value of the shares at the time fixed by law for the assessment of personal property for taxation for the years 1865 and 1866, and also provides that in no case shall such shares be assessed at more than their par value. We do not understand that it is claimed that the plaintiff's share was assessed too high, or was not worth par.

Moreover, if there was an overvaluation, the plaintiff might have had it reduced. The law required that the same rate of tax which was assessed and levied in 1865 and 1866 upon other moneyed capital in the hands of individual citizens of the state, in the city or place where the bank is located, should be assessed upon these shares, but that in no case should the rate exceed one and one-half per cent. upon the assessed value of the shares. This was conforming the legislation strictly to the limitations in the act of congress, unless that act requires the tax to be in all cases upon the shares of the state banks. I have already assumed that it was not the intention of congress, in framing the second proviso, to prescribe a mode of taxing the state banks, but to prevent unjust discrimination against the national banks. And this being so, the law of 1868 is in harmony with the 41st section.

It is alleged in the complaint that the rate imposed on the plaintiff's share for the years 1865 and 1866 exceeded the rate per cent. charged and assessed for "state tax" on other moneyed capital in the hands of individual citizens of Milwaukee for those years. This allegation may be true, and yet the plaintiff's share may not have been taxed as high as other property, which paid not only a state tax but also local and municipal taxes. The question is, Was one and a half per cent. upon the plaintiff's share a greater rate of taxation than was assessed upon other moneyed capital in Milwaukee of equal value for all purposes? This is not pretended. It was doubtless much less than was in fact imposed upon other property; since the local and municipal taxes constitute by far the greater burthens of taxation.

The authority of the legislature to pass a law providing for a re-assessment of a tax for a given year, where there has been a defect in the existing statute or in the tax proceedings, has been frequently affirmed by this court. No further remarks upon that point are deemed necessary.

It follows, from these views, that the demurrer to the complaint must be sustained.

*By the Court.* — Demurrer sustained.