MORSE and another vs. THE HOME INSURANCE COMPANY of New York City.

CONSTITUTIONAL LAW: — *Right to remove cause to federal court may be waived.* — *Foreign corporations subject to conditions imposed by state.* — *Effect of stipulation against removal of cause to federal courts.* — *Navigable streams.*

1. The right of a citizen of one state, when sued in the courts of another state, to have the cause removed to a federal court, is one which he may waive, or estop himself from setting up, by a previous stipulation or covenant to that effect.

2. A corporation created by one state has no power to do any corporate act in another state, except by the express or implied consent of the latter, and upon such terms as it shall prescribe.

3. Section 22, ch. 56, Laws of 1870, which requires fire insurance companies incorporated by the laws of any other state, or of a foreign government, before transacting the business of insurance by agents in this state, to appoint an attorney in this state upon whom legal process may be served, and stipulate that it will not remove to the federal courts any suit commenced against it in a court of this state, is a valid enactment, and the stipulation so made is binding upon the company.

4. Analagous conditions may be imposed by its charter upon a corporation created by this State; and the acceptance of the charter will be a waiver of rights which the corporation would possess if not thus expressly denied. *Per* DIXON, *C. J., arguendo,* and citing *Darge v. Horicon Iron Man. Co.,* (22 *Wis.,* 417); *Burrows v. Bashford,* (id., 103); *Van Slyke v. The State,* (23 id. 655); and *Bagnall v. The State,* (25 id., 112).

5. The Fox and Wolf rivers in this State, above Oshkosh and between that place and Winneconne, are *held* not to be public navigable waters of the United States within the admiralty jurisdiction. *The United States v. Steamer Montello,* decided in the U. S. Circuit Court for the Eastern District of Wisconsin, followed.

APPEAL from the Circuit Court for *Winnebago* County.

Action by *Morse* and *Paige* to recover upon a policy of insurance issued by the defendant company upon the steamboat "Diamond," running upon the Fox and Wolf rivers, between Oshkosh and Winneconne. The only points involved are fully

Morse and another vs. The Home Insurance Company.

stated in the opinion. Verdict for plaintiff, and a motion to set aside the same being denied, defendant appealed from the judgment.

*Finches, Lynde & Miller,* for appellant, contended that the circuit court erred in not granting the prayer of the petition to remove the cause into the United States court. The papers being in proper form, the removal should have been granted. *Knorr v. Home Insurance Company,* 25 Wis., 143. The condition imposed by the legislature, requiring foreign insurance companies to waive the right of removal of a cause to the federal courts before permitting them to transact business in the state, is void as against the fundamental law of the land, and as denying a right given by an express act of congress. See *Oakley v. Aspinwall,* 3 Comstock, 547; *Nute v. Hamilton Insurance Company,* 6 Gray, 174. To the point that Fox river was a "navigable water of the United States," counsel argued, that steamboats having passed on the river, laden with passengers and freight, destined to points outside of Wisconsin, the case came within the real meaning of the decision in *The Daniel Ball,* 10 Wallace, 557, the river forming a "continued highway," over which commerce might be carried on with other states or foreign countries.

*Gabe Bouck,* for respondents, to the point that the act of the legislature imposing the condition upon the insurance company was valid, cited *Paul v. Virginia,* 8 Wal., 168, and cases cited; *People v. Murray,* 5 Hill, 468. The legislature granted a favor in permitting foreign companies to transact business in the State, and might impose its own conditions, regardless of how such conditions might conflict with the legal or constitutional rights of such companies. *People v. Murray, supra,* sustained in *Burrows v. Bashford,* 22 Wis., 108. The contract of insurance, being made under this law, was presumed to be made with reference thereto. Hence the status of the insured and the insurer was the same as if the company had put an express condition in the policy that the insurer should not remove an

action thereon into the federal courts. To the point that Fox river was not a navigable stream, counsel cited *Veazie v. Moore*, 14 How., 568; *The Daniel Ball*, 10 Wal., 557; *The Montello*, 11 Wal., 411.

DIXON, C. J. This is an appeal by the insurance company upon which but two questions are presented, and after very full arguments by counsel and a careful examination by ourselves, we are quite satisfied that both were correctly decided by the court below.

The first question is as to the validity of so much of the act approved March 14, 1870, and of the agreement of the defendant company filed under it as declares that "it shall not be lawful for any fire insurance company, association or partnership, incorporated by or organized under the laws of any other State of the United States, or any foreign government, for any of the purposes specified in this act, directly or indirectly, to take risks, or transact any business of insurance in this state, unless * * * * such company desiring to transact any such business as aforesaid, by any agent or agents in this state, shall first appoint an attorney in this state, on whom process of law can be served, *containiny an agreement that such company will not remove the suit for trial into the United States Circuit Court or Federal Courts*, and file in the office of the secretary of state a written instrument, duly signed and sealed, certifying such appointment, which shall continue until another attorney be substituted." Laws 1870, ch. 56, § 22. 1 Tay. Sts. 958, § 22. The company here having made and filed the agreement and transacted business in this state under it, attempted, when this action was commenced to repudiate it and to remove the suit to the United States circuit court in violation of its own deliberate promise, and one of the express conditions upon which it had been permitted to transact such business. The language of its stipulation was: "and said company agrees that suits commenced in the state courts of Wisconsin, *shall not be removed by*

*the act of said company,* into the United States circuit or federal courts."

Both the act and agreement are attacked upon constitutional grounds. It is said that both the constitution of the United States and the laws of congress provide for such removals, and that any legislation on the part of the states calculated to hinder or prevent them in cases otherwise proper, is unconstitutional and void. It may be conceded that any state legislation intended or calculated *of itself,* or *by its own mere force,* to defeat or prevent the exercise of the right of removal where it exists, would be unconstitutional and void. It may be conceded that if congress in the exercise of its plenary power had withdrawn all jurisdiction from the state courts in the class of cases to which this belongs, that is, as " between citizens of different states," that then state legislation of the kind here in question could not be sustained. If, under the constitution and laws of the United States, exclusive jurisdiction of suits between citizens of different states were given to the courts of the United States, then it might well follow that the state courts could get no jurisdiction by waiver or by express consent, whether such waiver or consent was procured by aid of state legislation or not. In that case consent would not confer jurisdiction. But the constitution of the United States does not provide, nor has the congress as yet enacted that the federal courts shall have exclusive jurisdiction in such cases. On the contrary, the constitution recognizes, and so do the laws of congress, expressly, that the state courts may and shall continue to exercise jurisdiction in all such cases, except where the power of removal has been conferred upon the non-resident suitor, and he has seen fit to avail himself of it by compliance with the regulations of congress, enacted in that particular. But as yet this is a mere privilege bestowed on account of the relationship of being a citizen of another state, and which such citizen may exercise or not, at his mere will and pleasure, and the question here would seem to be whether it is a privilege of a kind capa-

ble of being waived by the party in whose favor it exists, or such that he may by stipulation or covenant deliberately and fairly entered into beforehand, bargain away or estop himself from setting up or taking future advantage of it.

And the question thus presented, differs very widely from those put by counsel, by way of attempted illustration of the supposed unconstitutionality of the act, and of the agreement entered into under it. The question differs very widely from that which would be presented, were this the case of a natural person, a citizen of another state, endowed with the full rights of an individual, and subject to no disabilities. It is not a question of the same kind at all, in substance or effect, as it would be, if the act and agreement involved the violation of some positive law of congress, as, a law relating to taxation by the United States, or laws regulating trade, commerce and navigation, or the carrying business between the different states. Instead of being an obnoxious, an unconstitutional act and agreement of that kind, it is one which relates to, and only proposes to deal with and take away, *by consent of the party having it*, a mere personal or individual privilege, conferred by law of congress, and which such party is and always has been at full liberty to accept or reject, as he may see fit, or think for his interest to do. The illustrations of the learned counsel fail, therefore, by reason of the essential differences of the cases. The mistake seems to be in supposing cases alike, which are materially and intrinsically different.

The question comes back, therefore, to one of competency on the part of this company to waive or surrender a right or privilege which it had, and which it could accept or reject as it chose, and also to one of power on the part of the state legislature to exact such waiver or surender as one of the conditions of permitting the company to do business in this state.

As to the first point, or that of competency to waive, we suppose it is too late to question at this day, that a party may, under proper circumstances, waive any right, even a constitu-

tional one, in matters of a civil nature, and especially that this may be done by a corporation which is the mere creature of the legislative power, and subject to such conditions and restrictions as the legislature deems proper to impose.   It was so held by this court in *Burrows v. Bashford*, 22 Wis., 103, and for reasons which there sufficiently appear, and also in *Darge v. The Horicon Iron Manufacturing Company*, ib., 417-421, where it was decided that a corporation created under a law of this state, could not be heard to object that a provision of its charter was unconstitutional or invalid, because it gave a beneficial right of appeal to the opposite party in a suit or proceeding, and at the same time gave the corporation only a nominal and unproductive right of appealing from the same judgment or decision.   It was held that having organized and acted under the charter, so far as to take the property of the plaintiff in that suit, the company was precluded from then objecting to the validity of its provisions prescribing what the remedy against the company should be. In other words, it was held that the company having accepted and acted under its charter, and received the benefits of it, had accepted also the burdens and disabilities which it imposed, and waived what otherwise might have been a constitutional right or valid objection to the provision.   See also cases there cited; *The People v. Murray*, 5 Hill, 468; *Van Allen v. The Assessors*, 3 Wallace, 573; and *Dunmore's Appeal*, 52 Pa. St. R., 374.

And it would seem on authority, that there are very few rights and privileges of this nature respecting the remedies of parties to contracts and civil actions, and to the time, place and mode of trial and of entering or of causing judgment to be entered against the party in default, which may not be the subject of express waiver. It was held, for example, by this court in *Ladd vs. Hildebrant*, 27 Wis. 135, 146, that a party to an action might waive a future contingent right, such as, before trial in ejectment, the right to a second trial given by the statute, in case judgment in the first should be against him.   It was there

said that a party may waive a future contingent right as well as one which he expressly has. But a very strong case upon this point is that of *Bank of Columbia vs. Okely*, 4 Wheat., 235, where it was held that an act of the assembly of Maryland, incorporating the bank of Columbia, and giving to the corporation a summary process by execution, in the nature of an attachment, against its debtors, who had by an express consent, in writing, made the bonds, bills, or notes by them drawn or endorsed, negotiable at the bank, was not repugnant to the constitution of the United States or of Maryland. The objection urged was that the act contravened the article in the constitution of Maryland, which secured the right of trial by jury in all cases at common law, and also the seventh amendment to the constitution of the United States, which secured the same right in suits at common law, where the value in controversy exceeded twenty dollars, but the same was overruled on the ground of waiver, and because the defendant by giving his note payable at the bank had voluntarily submitted to the special jurisdiction created by the act.

The court say: " Was this act void, as a law of Maryland ? If it was, it must have become so under the restrictions of the constitution of the state, or of the United States. What was the object of those restrictions ? It could not have been to protect the citizen from his own acts, for it would then have operated as a restraint upon his rights. 'It must have been against the acts of others. But, to constitute particular tribunals for the adjustment of controversies among them, to submit themselves to the exercise of summary remedies, or to temporary privations of rights of the deepest interest, are among the common incidents of life. Such are submissions to arbitration; such are stipulation bonds, forthcoming bonds and contracts of service. And it was with a view to the voluntary acquiescence of the individual, nay, the solicited submission to the law of the contract, that this remedy was given. By making the note payable at the bank of Columbia, the debtor chose his own ju-

risdiction; and in consideration of the credit given him, he voluntarily relinquished his claims to the ordinary administration of justice, and placed himself only in the situation of an hypothecator of goods, with power to sell on default, or a stipulator in admiralty, whose voluntary submission to the jurisdiction of that court subjects him to personal coercion. It is true, cases may be supposed in which the policy of a country may set bounds to the relinquishment of private rights. And this court would ponder long before it could sustain this action, if we could be persuaded that the act in question produced a total prostration of the trial by jury, or even involved the defendant in circumstances which rendered that right unavailing for his protection." See also *Arnet v. Insurance Co.*, 22 Wis., 516.

We are fully persuaded, therefore, that the right to remove this cause to the federal court for trial, was one which the defendant might waive and relinquish. We can perceive nothing in the policy of the law, either state or federal, which should forbid or prevent it. As already observed, it was a mere individual or private right, given for the benefit of the defendant, and to be exercised or not at its option, and whether the cause remained in the state court by stipulation, or went to the federal court without, or because no stipulation had been made, was not a matter which in any manner infringed the policy of the federal government, or concerned or involved the dignity or independence of its judiciary. It was a matter which concerned the particular rights and interests of the parties to the action and no one else.

And as to the point of the power of the state legislature to pass such an act, the supreme court seems also to have very clearly and definitively settled that. In *Bank of Augusta v. Earle*, 13 Peters R. 519, it was decided that a corporation created by one state had no power to do any corporate act in another state, unless by the express or implied consent of the latter. And in *Paul v. Commonwealth of Virginia*, 8 Wal., 168, the court use this language: "Having no absolute right of re-

cognition in other states, but depending for such recognition and the enforcement of its contracts upon their assent, it follows, as a matter of course, that such assent may be granted upon such terms and conditions as those states may think proper to impose. They may exclude the foreign corporation entirely; they may restrict its business to particular localities, or they may exact such security for the performance of its contracts with their citizens as in their judgment will best promote the public interest. The whole matter rests in their discretion."

This seems decisive of the point and to preclude the necessity or propriety of further discussion, especially when it is considered that the act does not purport to operate upon, or bind the foreign insurance company on the subject of removal, except *by its assent* freely and voluntarily given. As observed in *Bank of Columbia v. Okely*, it was with a view to the voluntary acquiescence of the foreign insurance company, nay, its solicited submission to the law of the contract, that this exclusive remedy in the state courts was given. By making and filing the agreement in the office of the secretary of state, the company chose its own jurisdiction, and, in consideration of the rights and privileges extended to it, of transacting business within the state, voluntarily relinquished the power and privilege of removal to the federal courts. As observed by the supreme court of Michigan in *The Glen Falls Ins. Co. v. The Judge of the Jackson Circuit*, 21 Mich., 580, a case fully in point upon the question here under consideration, the powers thus exercised by foreign insurance companies under our laws are the same as if they were incorporated by our laws, and they become, *pro tanto*, Wisconsin and not foreign corporations, for all practical purposes in this state. If, as decided in *Darge v. The Horicon Iron Manufacturing Company, supra*, the legislature may impose as a condition upon a corporation of its own creation, that it shall not have the right of appeal from an assessment by commissioners, or a judgment against itself, or the right of trial

by jury, and such corporation cannot be heard to complain, or if as decided in *Van Slyke v. The State*, 23 Wis., 655, and in *Bagnall v. The State*, 25 Wis., 112, both since affirmed on error in the supreme court of the United States, taxes may be annexed to the franchise as a royalty for the grant, or consideration for the corporate powers given, where otherwise no taxes could be levied or collected, it would be very strange, we say, if similar conditions or restrictions could not be imposed upon a foreign corporation in consideration of the license or permission granted to it to transact business within the state. Considering that the foreign corporation has no power to do any corporate act in this state except by the assent, express or implied, of the legislature, and that it derives its whole power and authority to do so from the latter, it necessarily follows that the legislature has the same power and all the power and control over it that it has over a corporation of its own creation.

The other question presented on this appeal, is whether the Fox and Wolf rivers in this state, above Oshkosh and between Oshkosh and Winneconne, are public navigable waters of the United States, within the admiralty jurisdiction. The policy of insurance upon which this suit was brought, was against loss by fire of the steamboat "Diamond," owned by the plaintiffs and used in navigating those rivers between the places named, and among other clauses exempting the company from liability, the policy contained the following: "Nor for any loss or damage by fire caused by means of an invasion, insurrection, riot, civil commotion, nor in consequence of any neglect or deviation from the laws or regulations of police, where such exist." The complaint contained the usual averment negativing the loss from such causes and the answer denied that part of the allegation which was that the loss did not occur "in consequence of any neglect or deviation from the laws or regulations of police existing at the time of such fire." On the trial, the defendant interrogated witnesses. and offered to prove that the steamboat was not enrolled and licensed for the coasting trade as required

by the laws of congress for vessels engaged in navigating the public navigable waters of the United States, and that she had not on board those appliances, means and facilities for extinguishing fire prescribed for such vessels by the act of congress, approved February 28, 1871, and by the printed rules and regulations adopted and issued by the board of supervising inspectors of steam vessels, under said act. The evidence was excluded, and the question thereupon arising, is whether the vessel was within the operation of those laws which depends upon the navigable character of the streams upon which she was employed at and before the time of loss. The acts of congress apply only to vessels navigating the public navigable waters of the United States, to which admiralty jurisdiction extends, and this question, much more than that first above considered, is one of peculiarly federal jurisdiction and cognizance.

We have been favored with a newspaper copy of an able and elaborate opinion of the circuit court of the United States for the eastern district of this state, delivered by MILLER, D. J., in the case of *The United States v. The Steamer Montello*, which fully examines and discusses the navigable character of these rivers at and between the places above referred to, and from a point far below Oshkosh, on the Fox river. It was there held that the Fox river, and of course its tributaries above Depere Rapids, is not a public navigable water of the United States, within the admiralty jurisdiction. We are not aware that the precise question has been determined by the supreme court though the case in the circuit court was the same as that in the supreme, *The Montello*, 11 Wal., 411, where that court declined to consider it for want of sufficient allegations and evidence showing the precise character of the Fox river as a navigable stream, and remanded the cause to the court below for further proceedings, in order that those defects might be obviated. The cases of *Veazie v. Wyman*, 14 How, 568, and *The Daniel Ball*, 10 Wal., 557, seem to be decisive of the principle of law involved, as well as the former to touch very closely upon the

facts here presented. But it does not become this court to scrutinize or disregard the decision of the learned circuit court, upon a question of this nature. We cannot, if we would, force upon that court a jurisdiction which it declines to take under the laws of congress, nor give to those laws an interpretation different from that which they receive in the judicial tribunals, whose duty and sole prerogative it is to expound and apply them. When the decision of the circuit court is reversed, if by chance it shall be on a second appeal, which we understand is pending, then of course this court, in common with that, will stand corrected upon the question, but until that time, if it shall ever come, we are quite content to abide the decision of the circuit court.

In conclusion, we have to express the satisfaction that if we are wrong upon either or both the questions which have been considered, the defendant in the action has its remedy to correct us by writ of error issuing from the supreme court.

*By the Court.*—Judgment affirmed.