THE CONNECTICUT MUTUAL LIFE INSURANCE COMPANY vs. CROSS and others.

Foreign corporations may transact in this state any business authorized by their charters and not inconsistent with the laws and policy of the state; and contracts arising out of such transactions will be enforced in the courts of this state at the suit of such corporations.

Even if the power to loan money is not a necessary incident to the business of an insurance company (a point not decided), still in an action brought by a foreign insurance company in a court of this state, to recover money loaned, with interest, it is not necessary to set out in the complaint in *haec verba* that portion of the plaintiff's charter which confers the power to loan money; but it is sufficient (under secs. 4 and 11, ch. 148, R. S.) to plead the act of incorporation by reciting its title, with proper averments as to the legislative authority by which it was enacted, and to allege in general terms the authority of the company to make the loan.

Since the enactment of ch. 243, Laws of 1862, a complaint against the mortgagor and others for the foreclosure of a mortgage and for a judgment against the mortgagor for any deficiency, does not improperly unite different causes of action.

The rendition of such a personal judgment by the court without the intervention of a jury, is not an infringement of the right of trial by jury secured by the constitution. *Stilwell v. Kellogg*, 14 Wis., 461, followed.

The adoption of the constitution of this state by the people thereof, and the assent of the government of the United States thereto, and the subsequent admission of the state into the Union, are effectual to abrogate the ordinance of 1787 for the government of the territory north-west of the Ohio river, in so far as the provisions of that ordinance conflict with those of the state constitution.

APPEAL from the County Court of *Milwaukee* County.

The complaint alleges that at the time of the transactions thereinafter set forth the plaintiff was, and at the commencement of this action still continued to be, a corporation existing under and by virtue of the laws of the state of Connecticut, and was duly incorporated by an act of the legislature of that state entitled "An act incorporating the Connecticut Mutual Life Insurance Company," approved June 12th, 1846, and was authorized to sue in all courts in said corporate name; and that it had its principal place of business in Hartford in said state. The complaint then alleges in substance that the defendant *James B. Cross*, to secure the payment to the plaintiff

of $20,000 with interest, executed to the plaintiff in March, 1856, his bond in the penal sum of $40,000, conditioned for the payment of said sum with interest on the 1st of April, 1861 ; that, as collateral security for the payment of said indebtedness, said *Cross*, on the same day, executed, acknowledged and delivered to the plaintiff a mortgage on certain lands described in the complaint; that said bond and mortgage were given to secure the payment of money loaned by the plaintiff to said *James B. Cross*; and that the plaintiff "was duly authorized and empowered to make said loan and to receive said bond and mortgage therefor." The complaint then alleges default in the payment of the principal and interest of said indebtedness; that the plaintiff is the legal owner and holder of said bond and mortgage; that no proceedings have been had &c. ; and that the other defendants claim some interest subsequent to said mortgage ; and prays for a judgment of foreclosure and sale, and for a personal judgment against *Cross* for any deficiency.

The defendant *Cross* demurred, on the grounds that several causes of action were improperly joined in the complaint, and that the complaint did not state a cause of action, in this, that it did not set forth the act incorporating the plaintiff, nor allege that it had capacity to sue, or possessed banking powers, or authority to loan money and take security upon real property for the repayment thereof, or in any wise deal in real estate. The demurrer was overruled, and from this order the defendant *Cross* appealed.

*Peter Yates*, for appellant:

1. Foreign laws are considered as facts to be proved. They should therefore be *alleged* and proved as other facts are. *Monroe v. Douglass*, 1 Seld., 447. This is to be done by a recital in *haec verba* of so much of the foreign statute as authorizes the act or contract declared on. Under the New York statute, copied in this state, and according to the New York decisions, properly followed here, in an action by a *domestic* corpo-

ration it is not necessary that the complaint should show the right of the corporation to bring the suit and to make the contract it seeks to enforce. The title and date of the passage of the act is sufficient. But it is otherwise when a right under a foreign statute is pleaded. *Collett v. Keith*, 2 East, 260, 273-4; *Wheeler v. Raymond*, 8 Cow., 311; *Wright v. Paton*, 10 Johns., 300; *Frye v. Bank of Illinois*, 5 Gilman, 332; 10 Wend., 75; 7 Conn., 92; 1 Mass., 103; 2 id., 34; 8 id., 99.  2. The legal cause of action on the bond against the appellant was improperly joined with the equitable cause of action for the foreclosure of the mortgage against all the defendants. Ch. 243, Laws of 1862, does not remove this objection.  3. Counsel contended that the whole Code of Proceedure of 1857, in so far as it was a departure from the rules of the common law, was invalid, because in conflict with Article II of the "Articles of Compact" which form a part of the "Ordinance for the government of the territory of the U. S. north-west of the River Ohio," adopted in the congress of 1787. That article declares, among other things, that "the inhabitants of the said territory shall always be entitled to the benefits * * of judicial proceedings *according to the course of the common law*." It is also declared in the ordinance that this and other articles "shall be considered articles of compact between the original states and the people and states in the said territory, and forever remain unalterable, unless by common consent." It is also declared in the preamble to said articles (the 12th section of the Ordinance) that the object thereof is to fix and establish the principles therein defined "as the basis of all laws, constitutions and governments which forever hereafter shall be formed in the said territory."

*Carter, Pitkin & Davis*, for respondent.

*By the Court*, DIXON, C. J.   Whether foreign corporations have capacity to contract in this state and to sue in our courts, are questions which require no discussion. The counsel for

the appellant concedes, as we think, very properly, that they have such capacity. Certainly no principle can be better settled than that corporations created in one state may transact such business as their charters authorize in another state, provided the business so transacted be not inconsistent with the laws or policy of that state, and contracts arising out of such transactions, not otherwise unlawful, will be enforced. The same is true of their capacity to sue and appear in the courts of another state.

We come then at once to the form of the pleading. It is urged, as we understand the argument, that the complaint is insufficient because it does not set forth in *haec verba* those parts of the charter which authorize the respondent to loan money upon bond and mortgage. *Prima facie*, says the counsel, the respondent, an insurance company, has no such authority; it is a contract foreign to its name and business. Hence the express provisions of charter, if there be any, must be set out in *haec verba*.

It is very questionable whether the counsel is correct in assuming that express authority is necessary to enable insurance and other corporations holding funds in trust for stockholders and others, to enter into such contracts. There are many very respectable authorities which hold that the loaning of money upon such securities is a power necessarily incident to the business which such companies are authorized to transact. If this be so, then the argument founded upon the supposed distinction between express and implied powers, as to the mode of pleading, falls to the ground.

But we deem it unnecessary to enter upon the discussion of this and other points made by counsel, since we are of opinion that the whole matter, so far as the present complaint is concerned, is conclusively settled by statute. In this case the act of incorporation is pleaded by reciting the title with proper averments as to the legislative authority by which it was enacted. The authority of the company to make the loan is also

averred in general terms. The statute, secs. 4 and 11, ch. 148, R. S., is as follows: " Section 4. In actions by or against any corporation created by or under any law of this state, it shall not be necessary to recite the act or acts of incorporation, or the proceedings by which such corporation was created, or to set forth the substance thereof; but the same may be plead-ed by reciting the title of such act. Section 11. A foreign corporation created by or under the law of any other state, government or country, may prosecute in the courts of this state *in the same manner as corporations created under the laws of this state*, upon giving security for the payment of costs of action, in the same manner that non-residents are required by law to do." It is very obvious that domestic corporations, as matter of pleading, are not required to set out their acts of incorporation, either in *haec verba* or in substance, either as to their express powers or those which are implied, but that, the title of the act being recited, a general averment is in any case sufficient. Foreign corporations are placed upon the same footing, and the complaint is in these respects good.

The objections that different causes of action are improperly united, and that the authority of courts of equity to give judgment for deficiency after the sale of mortgaged premises is an infringement of the right of trial by jury secured by the constitution, are fully met by ch. 243, Laws of 1862, and the case of *Stilwell v. Kellogg*, 14 Wis., 461.

The appellant's counsel has further favored us with a most elaborate argument, the classification of which is somewhat more difficult. It is aimed in part at the decision in *Stilwell v. Kellogg*, and the case there cited, but more especially at the Code of Procedure, the whole fabric of which, from foundation to key-stone, the counsel seeks to upset and leave in shapeless ruins. In this last respect it may be said to be a blow at all the decisions of this court since 1857, and indeed very many before that time. The code being a nullity, and all proceedings connected with it void, the counsel argues that the plaintiff

has no action at all, and that there is nothing before the court for its consideration. Certainly, if sustained, the point ought to be good on demurrer. He reasons, not that the code violates the constitution, but that the constitution is unconstitutional; that although that instrument apparently confers the power, yet it is incompetent for the legislature to enact the code or any other system of practice different from that which prevailed at the common law above seventy-five years ago. He goes back of all written constitutions in this country, and takes his positions upon article II of the so called "Articles of Compact" found in the famous Ordinance of 1787 for the government of the territory north-west of the river Ohio. That article, among other things, provides that " the people of said territory shall always be entitled to the benefits of the trial by jury * * * and of judicial proceedings according to the course of the common law." These articles, says the counsel, being declared the basis of all laws, constitutions and governments which forever thereafter should be formed in the said territory, are paramount, and must govern in all cases of conflict between them and the constitutions and laws of the states and governments since erected within said territory. Hence he argues that the right to trial by jury remains as at the passage of the ordinance, and that the course of judicial proceedings then existing at the common law still continues, and must forever continue inviolate and inviolable, the constitution and laws of this state to the contrary notwithstanding. If this be so, then it will be seen, as already suggested, that the conclusion of the counsel reaches far beyond the code. It leaves scarce a trace of all our legislation, state or territorial, upon the vastly important subject of remedies; for after the lapse of three quarters of a century and whilst we were still practicing as at the common law, no single proceeding remained precise as it was at the time the ordinance was passed, and many were wholly remodeled and changed. A conclusion so startling is only equaled by another of a kindred nature which I once

heard gravely urged by a learned counsel of this court, to the effect that we have no common law at all in this state, and never have had, and never can have, except it be through the medium of direct legislative enactment or adoption. Between the two theories, that we have no common law and that we have no statute law, the people of our state would be left in a most unfortunate dilemma. But to return to the propositions of the counsel: we are in doubt whether to take them seriously or not. If intended as a joke, they are capitally good; if as an argument, *capitally* bad. And in support of the last conclusion we have merely to suggest, conceding to the ordinance the force and vitality which the counsel claims for it, that the adoption of the constitution of this state by the free will and vote of the people with the assent of the government of the the United States, and the subsequent admission of the state into the Union, in our judgment, abrogates entirely the provisions of the ordinance wherever its provisions and those of the state constitution come in conflict. Such adoption and ratification of the constitution was a repeal of the ordinance "by mutual consent," as provided for by the ordinance itself, and gave to the legislature of the state plenary powers of legislation, except as limited by the constitution of the United States and the constitution of this state.

Order affirmed.