THE STATE ex rel. ATTORNEY GENERAL vs. THE MILWAUKEE, LAKE SHORE & WESTERN RAILWAY COMPANY.

CORPORATIONS: FORFEITURE: JURISDICTION OF SUPREME COURT: JOINDER. *(1–3) Forfeiture of railroad charter for failure to keep books and officers in the state. (4) Original jurisdiction of supreme court. (5) Parties plaintiff. (6) Joinder of causes of action.*

1. The statutes of this state relating to the levy of attachment or execution upon shares of stockholders in corporations, to proceedings by or against corporations, and to the exercise of the visitorial powers of the state over them, as well as the act regulating the duties of the railroad commissioner, and the general act concerning railroad corporations, under which

580    SUPREME COURT OF WISCONSIN,

State ex rel. Attorney General vs. Milwaukee, L. S. & W. R'y Co.

the defendant was organized, and other statutes, require, at least by necessary implication, that the principal place of business, the records, and the residence of the principal officers of private corporations created by this state, shall be within the state, at least so far as may be necessary to give full effect to those statutes; and the charter of such a corporation may be adjudged forfeited for continued neglect of such duty, under ch. 283 of 1874.

2. Independently of statutes, it is the duty of a private corporation to keep its principal place of business, its records and the residence of its officers, so located as to render it accessible to the process and to the exercise of the visitorial power of the state by which it is created; and a forfeiture may be adjudged for violation of this common-law obligation.

3. An information showing that the principal office of the defendant company is in the city of New York; that its books and records have always been kept in that city; that none of its principal officers reside in this state; and that by reason of these facts it has been impossible to enforce an attachment against the shares of stockholders in said company in actions brought in courts of this state, in accordance with the laws thereof — *held*, on demurrer, to show sufficient ground for adjudging a forfeiture of the company's charter.

4. This court takes *original* jurisdiction of an information in the nature of a *quo warranto*, filed, on leave of the court, by the attorney general in behalf of the state, to annul the charter of a railroad company upon the grounds above stated.

5. Persons injured by the alleged misconduct of the company, in specific instances stated in the information, need not be joined as plaintiffs or made relators, in this action.

6. The several particulars of the defendant's abuse of its franchises alleged in the information (its having its principal office in another state, its keeping its records there, and the fact that its officers reside there), are not distinct causes of action; but even the joinder of distinct grounds of forfeiture in such an information would not be demurrable.


INFORMATION in the nature of *Quo Warranto*.

The object of this information (filed in this court) was to have a forfeiture of defendant's charter adjudged. The grounds upon which the judgment was asked, will appear from the opinion. Defendant demurred, to the jurisdiction of the court; for defect of parties plaintiff; for misjoinder of several causes of action; and for insufficiency of facts.

For the defendant, a brief was filed by *Cottrill & Cary*, and the cause was argued orally by *A. L. Cary*. Upon the point that no cause of action was stated in the complaint, they ar-

gued, 1. That a corporation may exercise its powers in any place, unless restricted by its charter or by the law of the place where it attempts to act; and the common law does not require its directors and officers either to reside or to perform their official acts within the jurisdiction where it was created. Field on Corp., § 244; *Miller v. Ewer*, 27 Me., 509, 520; *Copp v. Lamb*, 12 id., 312; *Arms v. Conant*, 36 Vt., 744; *O. & M. Railroad Co. v. McPherson*, 35 Mo., 13, per DRYDEN, J.; *McCall v. Byram Manuf'g Co.*, 6 Conn., 428; opinion of PORTER, J., in *Merrick v. Van Santvoord*, 34 N. Y., 208, 218, 220; *Mumford v. Ins. & Trust Co.*, 4 id., 463, 482; *Bard v. Poole*, 12 id., 495, 504; *N. Y. Floating Derrick Co. v. N. J. Oil Co.*, 3 Duer, 648; *Smith v. Alvord*, 63 Barb., 415; *Wright v. Bundy*, 11 Ind., 398, 404; *W. H. H. Mining Co. v. King*, 45 Ga., 34; *Galveston Railroad v. Cowdrey*, 11 Wall., 476-7. 2. That the statutes of this state, instead of prohibiting, authorized defendant to keep its general office, books and records without the state. (1) Sec. 42, ch. 119, Laws of 1872, under which defendant was organized, provides that "all actions against any railroad corporation created by the laws of the state, or any corporation operating any railroad within this state under any lease or otherwise . . . shall be brought in some county through which such railroad runs; and no proceedings shall be had or entertained in any such action, unless process shall have been duly served upon the president, secretary, superintendent, general manager or general solicitor of such corporation: *provided*, that in all actions against any such corporation *whose aforesaid officers shall all reside or be without the state, or whose principal office is without the state*, and in all actions brought in justices' court, the process may be served upon any agent of the company against which the action is brought, who has charge of a depot or station," etc. (2) Sec. 51 of the same chapter provides that "any railroad company heretofore or hereafter incorporated under the laws of this state, *may exercise all its rights, franchises and privileges in any other state or territory of the United States*," subject to the laws of

such state or territory, and may accept from it additional powers or privileges as to the carriage of persons and property or the doing of other acts therein. This is equivalent to saying that it may do in such other state or territory every act which it may lawfully do by virtue of its charter in this state. *State v. Main*, 16 Wis., 398, 412. (3) Sec. 3, ch. 91, Laws of 1858, which required every railroad company incorporated by the laws of this state to keep its principal office and books within the state, was repealed by sec. 56, ch. 119 of 1872. (4) On a foreclosure of mortgages given to secure bonds of the original companies by which defendant's line of road was built, the property was purchased for the bondholders, who were nonresidents, and the purchasers organized the defendant company, as authorized by ch. 119 of 1872. All the stockholders in the new company were nonresidents; and secs. 4 and 5 of ch. 119, require that the president and directors shall be stockholders. If the purchasers and stockholders were ineligible as directors or officers of the corporation, because they were nonresidents, they would not only have been compelled to part with a portion of their property to qualify residents of the state to fill their places, but would also have been compelled to become residents of the state themselves, or lose all personal supervision and control of their property invested in this railroad. There is no common law which would work such a result; and no statute should without necessity be construed to produce such injustice. Field on Corp., §§ 456, 458.

*L. S. Dixon*, of counsel, for the state:

1. This proceeding is instituted under ch. 283 of 1874, and the charter is sought to be annulled for the first four reasons specified in sec. 1 of that chapter. As to what constitute causes of forfeiture, see *Comm. v. Commercial Bank*, 28 Pa. St., 383; *People v. K. & M. Turnpike Co.*, 23 Wend., 193; Field on Corp., §§ 455–7, and notes. 2. Secs. 12–14, ch. 130, and secs. 33–35, ch. 134, R. S. 1858, regulate the remedies against corporations, and show that they must keep their offices, officers, books, etc., in this state. 3. Secs. 21 and 22, ch. 78, R. S. 1858, contain regulations concerning visitorial powers, and these form part

AUGUST TERM, 1878. .583

State ex rel. Attorney General vs. Milwaukee, L. S. & W. R'y Co.

of the charters of all corporations, and show also where their offices, officers and books must be. These regulations are expressly made part of defendant's charter. Laws of 1872, ch. 119, sec. 1, last clause; see also sec. 38 of same chapter, and sec. 9, ch. 273 of 1874. As to the usefulness of the visitorial powers, see *In re Falvey*, 7 Wis., 637. 4. Sec. 42, ch. 119 of 1874, does not authorize corporations to absent themselves from the state. It provides against such a contingency, should it happen, for the purpose of service of process, and for no other purpose. It must be construed distributively, according to the rule, *reddendo singula singulis*. Two classes of corporations are spoken of, and the reference in the *proviso* is to foreign corporations operating roads in this state. Burrill's Law Dic., s. v. "*Reddendo*," etc.; 1 Spence's Eq., 554. 5. The statutes above cited are all *in pari materia*, and are to be construed together, and so as to give effect to the intent of the legislature and to all the enactments, which may easily be done. Sedgw. on Stat. Con., 209–212. 6. To justify the removal of the office and records of a corporation to another state, thus changing its residence and home, express legislative authority must be shown.

ORTON, J. This is a proceeding by information in the nature of *quo warranto*, filed by the attorney general, by leave of the court, in the name and on behalf of the state, against the defendant corporation, to vacate its charter, annul its corporate existence, and to have its rights, powers, privileges and franchises adjudged and declared forfeited.

As the grounds of the information, it is alleged that the principal or general office of said corporation is located without this state, and in the city and state of New York; that the books and records of the corporation are not kept, and have never at any time been kept, within this state, but have been kept, and are and now remain, in the city and state of New York; and that none of the general officers of said corporation reside in this state, but that its president, secretary and treasurer all reside in the city and state of New York.

As a consequence and particular mischief produced by such an abuse or misuse of its powers and franchises, it is stated, in substance, that, in the year 1877, the United States Rolling Stock Corporation commenced an action in the circuit court of Milwaukee county against certain stockholders of the defendant corporation, and that in said suit the shares of stock in said last named corporation belonging to the defendant stockholders, with its interest and profits, were *attached;* but that, in consequence of the books and records and general officers of said corporation defendant being and remaining out of this state, no adequate service could be made upon any one who was able to answer and disclose upon examination anything pertinent or material touching the ownership of said stock or other property by said defendant stockholders, or their interest therein, or the particulars or amount thereof, and the same could not be ascertained from any books or records of said corporation within this state; and that no access to the proper books and records of said corporation, in which the entries of such stock are kept, could be had within this state; and that no sufficient attachment of said shares of stock or other property of said defendant stockholders in said corporation could be made, and no service had upon all of the stockholders of said corporation sought to be charged in said suit.

It appears by the return of the sheriff of Milwaukee county, that the summons and information herein were served at the city of Milwaukee, by delivering to and leaving with one A. F. Graham, a freight agent of the company, a copy thereof — the general office of said company not being within the state of Wisconsin,— and by delivering also a copy thereof to, and leaving the same with, one F. W. Rhinelander, the president of said corporation defendant.

Notwithstanding the last part of this return, the allegation in the information, " that none of the general officers of said corporation reside in this state, but that its president, secretary and treasurer reside in the city and state of New York," on demurrer to the information, must be taken as true.

The demurrer to the information is upon four grounds:

1. That the court has no jurisdiction of the subject of the action. 2. That there is a defect of parties plaintiff. 3. That several causes of action have been improperly joined. 4. That said information does not state facts sufficient to constitute a cause of action, or to entitle the plaintiff to the relief demanded, or to any relief.

The jurisdiction of the court in this proceeding is not now an open question. *State v. Milwaukee Gas Light Co.*, 29 Wis., 454; *Attorney General v. The West Wisconsin Railway Co.*, 34 id., 197; and *Att'y Gen. v. West Wis. R'y Co.*, 36 id., 466.

The last case was similar to this, and the same relief asked, and the question of jurisdiction was distinctly raised upon demurrer, and fully sustained by a most able and elaborate opinion by the late chief justice.

Questions of very great public interest, involving the sovereignty and jurisdiction of the state over the corporations of its own creation, charged with gross abuse and misuser of its powers and franchises, are presented by this information; and if this court could take jurisdiction only of cases in *quo warranto* of paramount public importance, this would seem to be such a case.

If, by the objection that there is a defect of parties plaintiff, is meant that the United States Rolling Stock Company, the plaintiff in the attachment proceedings, injured by the conduct of the defendant, should have been made the relator or joined with the state, it is sufficient to refer to the statute authorizing and regulating this particular proceeding. Sec. 1, ch. 283, Laws of 1874.

This proceeding is not to enforce a private right or to administer a personal remedy; and the said attachment proceedings, and their alleged failure by reason of the conduct of the corporation complained of, can be considered only as an *instance* of what might be a *common* mischief resulting from the same cause.

The third objection is somewhat obscure, for it is not perceived that there is more than one cause of action stated.

The information contains a general statement of the misuse or abuse of the powers and franchises of the defendant and a violation of its charter in certain particulars. These particulars, " that the defendant keeps its principal place of business, its books and records, and all its general officers, in the city of New York," so that the jurisdiction of the courts of this state is inadequate and ineffectual to administer the common remedies of the law in causes against the corporation, or in which the stock or property of its stockholders therein is in question, taken together, make one general charge, and state but one cause of forfeiture. The charge is, in effect, that this corporation has placed and kept itself in such condition towards the state, the public and third persons, in its business and management, that it is beyond the reach of the laws and jurisdiction, and in defiance of the sovereignty and visitorial supervision, of the state, to the detriment of public interests and private rights.

But if the information should be held to set up several and distinct causes of forfeiture, it would not be demurrable for that reason. " *Quo warranto* being in the nature of criminal proceedings, the attorney general may plead or reply as many distinct causes as he thinks proper." *The People v. The President and Directors of the Manhattan Co.*, 9 Wend., 351.

The last ground of demurrer, " that the information does not state facts sufficient to entitle the plaintiff to the relief demanded," raises a question of very grave importance, and, so far as I have been able to find, a question in many respects new, and one of considerable difficulty. There may have been cases in *quo warranto* to forfeit the franchises of a corporation for the *precise* cause assigned in this information; but I have found none in the limited examination I have been able to make. But the cases in which the same causes in principle have been decided to be a fatal misuser and abuse of the franchises of a corporation, and a violation of the implied conditions of its existence, are numerous.

There appears to be no statute of this state, now in force, specifically requiring a railroad corporation of the state to

keep its principal office or place of business, or its books and records, within the state. Such a provision is in ch. 91, Laws of 1858; but said chapter is repealed by sec. 56, ch. 119, Laws of 1872; and it is contended by the learned counsel of the defendant, that such repeal is a legislative expression of assent or permission for all such corporations to keep their principal office or place of business, and their books and records, anywhere and out of the state. If this statute imposed a new duty or required something to be done not before required by law, its repeal might have the effect claimed. But if such a duty to the state and the public, to keep its principal place of business and its books and records within the state, accessible to all persons interested under judicial orders and judgments, and to the visitorial authorities of the state, is a *common-law* duty, always required of such corporations, and an implied condition of their charters, then either the enactment or repeal of such a statute would be of very little consequence. This duty in respect to keeping its place of business and its books and records within the state, if it be a duty, is consistent with the other duty, not named in the statute, of having the residence of its principal officers also within the state. This latter duty would seem to be the more important, as it would render possible the service of process, the obtaining of information, and the enforcement of full disclosures of the affairs, stock and property of the corporation.

There are many statutes that would seem to require such a corporation to so far keep its general business, books, records and officers within the state, as to at least make effectual and operative the statutes themselves. Of such are the provisions of secs. 12, 13 and 14 of ch. 130, R. S. 1858, relating to the attachment of shares of stock in corporations, and the interest and profits thereon, and authorizing the service of a certified copy of the attachment and notice thereof, upon the *president, secretary, cashier, or managing agent* of the company, and requiring such officer to furnish the sheriff a certificate under his hand of the number of rights and shares of the defendant in the attachment, in the stock of the company,

with any dividend or incumbrance thereon, or the amount and description of the property held by the company, for the benefit of the defendant; and, in case of refusal, requiring such officer to be examined on oath concerning the same, and authorizing the enforcement of such orders by attachment for contempt.

Of such, also, are the provisions of sections 33, 34 and 35 of chapter 134, R. S. 1858, relating to the levying of execution upon any share or interest of a stockholder in any corporation of the state, and requiring an attested copy thereof to be left with the officers of the company, or with *the officer having at the time the custody* of the books and papers, and such officer to furnish a certificate of such shares of stock and the particulars thereof. Section 18, chapter 120, R. S. 1858, authorizes the service of process against a corporation upon the president, cashier or other *principal officer*, or by leaving a copy thereof at his last usual *place of abode*.

Chapter 148, R. S. 1858, entitled, "Of proceedings by and against corporations," contains numerous provisions consistent only with constant accessibility, through the courts, to the officers, books, records, papers and management of a corporation within the state; and section 15 of said chapter confers upon the circuit courts of the state the most comprehensive jurisdiction, and the fullest power of visitation, over the directors, managers, trustees and other officers of corporations, and over their conduct, management and disposition of the funds and property in their charge.

Section 22 of chapter 78, R. S. 1858, confers upon the attorney general, and reserves to the legislature, the most extensive visitorial power over all corporations of the state, and provides for the fullest examination and inspection of their "vaults, safes, books, papers and documents," and to obtain access to them by summary process of the courts, or the judges thereof, and for the examination on oath of the directors or officers in relation to the condition and affairs of the corporation. These last provisions are expressly made a part of chapter 119, Laws of 1872, under which the defendant corporation was organized,

AUGUST TERM, 1878.            589

State ex rel. Attorney General vs. Milwaukee, L. S. & W. R'y Co.

and which is a part of its charter; and section 38 of this chapter provides fully as to what officer shall have the custody of the books, records and papers of the corporation, and that "such secretary, on being duly subpœnaed to appear as a witness in any cause or trial in any court of justice in this state, shall attend and produce such books and records of the corporation as may be demanded in such subpœna to be used in such trial." Section 9, chapter 273, Laws of 1874, makes provision for the railroad commissioner of this state to administer oaths and examine witnesses, to send for papers, and that he "*shall at any and all times have access to any and all books and papers in any railroad office, kept for and used in any railroad office, by any railroad company in this state.*"

In view of these numerous and important provisions of the statutes, it is *difficult* to say that the laws of this state do not *directly* require, and *impossible* to say that they do not by *necessary implication* require, that the principal place of business, the books and records and principal officers of the corporation should be constantly kept within the state, to an extent, at least, adequately to give full effect and operation to these statutes. If this be so, then clearly this information may be sustained strictly under ch. 283, Laws of 1874, which prescribes the causes for vacating the charter and annulling the existence of a corporation offending in these particulars. Section 16, ch. 160, R. S. 1858, is still in force, and the language is quite comprehensive and general, that, "if it shall be adjudged that a corporation against which an action shall have been brought pursuant to this chapter, has, by *neglect, abuse* or surrender, forfeited its corporate rights, privileges and franchises, judgment shall be rendered," etc.; which language would seem to give the specific causes of forfeiture named a construction broad enough to embrace all the causes of forfeiture known at common law.

But, notwithstanding the statute, causes of forfeiture at common law may be embraced in the information, with the statutory causes. The statute does not use any language indicating an intent to cut off any of the ancient grounds on which

the remedy by information was founded. *People v. Bristol & Ran. Turnpike Co.*, 23 Wend., 233.

These common-law causes embrace "an abuse of powers and delinquency" *(Rex v. Pasmore*, 3 Term, 244); "malfeasance and nonfeasance" *(Commonwealth v. Union Fire & Marine Ins. Co.*, 5 Mass., 232); "negligence and abuse of franchises" (1 Black. Com., 485); "nonuser and neglect" *(Rex v. Amery*, 2 Term, 515); ".things done or omitted to be·done" (3 Harg. St. Tr., 627). The corporation "may be dissolved by a forfeiture of its charter through *abuse* or *neglect* of its franchises, as for condition broken; there being a tacit condition in every such grant, that the corporation shall act up to the end of its institution." *Ches. & Ohio Canal Co. v. Balt. & Ohio R. R. Co.*, 4 Gill & John., 121. This is probably more than sufficient to show that this information sets up sufficient causes of forfeiture, if the acts complained of are illegal either under the statute or at common law, or in violation of the charter of the corporation, or of the inherent and fundamental principles and implied conditions of its existence. These principles and conditions, which are so vital to all corporations holding the franchises of the state, are aside from, and perhaps above, the statute law prescribing the causes of forfeiture; for they are more permanent and important, and it is questionable whether legislation abolishing this remedy, and giving the right to a corporation to act in such manner as to be independent of and paramount to the sovereignty of the state and the jurisdiction of its courts, would be of any validity.

In consideration of what has already been said, and the authorities cited, and supported by other authorities hereafter to be considered, we hold that it is the duty of the defendant corporation to keep its principal place of business, its books and records, and its principal officers, within the state, to an extent necessary to the fullest jurisdiction and visitorial power of the state and its courts, and the efficient exercise thereof in all proper cases which concern said corporation; and that the information sufficiently shows a total neglect of this duty, and

an abuse and misuser of its corporate powers, privileges and franchises in these particulars, which justify and demand a forfeiture thereof by the judgment of this court.

The great importance of this case demands further investigation of the particulars of this general duty of corporations, and a fuller consideration of the authorities upon the subject.

The visitorial power of the state over its corporations does not depend alone upon the statute, but exists as a necessary and inherent power in the government which creates the corporations, at common law. This common-law right of visitation, in its strict sense, was primarily exercised in England almost exclusively over eleemosynary corporations; for it was said in respect to them, that there were virtually two founders of the corporation, the king, who incorporated, and the persons who gave it revenues; the first called the *fundatio incipiens*, and the latter the *fundatio perficiens;* and the right of visitation, so called, was in the *endower or patron*, subject, however, in all cases, to the government. In analogy to this right of visitation as to charitable corporations, the common-law right of visitation over *civil* corporations existed in the government alone, as being the sole founder, as well as the grantor of their franchises; and in England the king always exercised this right as *sole visitor;* but, as Sir William Blackstone says in his Commentaries (1 Black. Com.; 480): "The king being thus constituted by law *visitor* of all civil corporations, the law has also appointed the place wherein he shall exercise this jurisdiction, which is the court of King's Bench;" and to that jurisdiction all civil corporations were constantly amenable and subject, through the officers of the crown. In this country, this common-law right of visitation is in the state or government which creates the corporation; and "civil corporations are visited by the government itself, through the medium of the courts of justice." Angell & Ames, § 684. In *Re Taylor Orphan Asylum*, 36 Wis., 554, the visitorial power of the courts of this state over eleemosynary corporations, in cases where no *visitor* is appointed, is fully asserted by the able opinion of the chief justice, as a

common-law jurisdiction; and, within the principle of that case, the same visitorial jurisdiction is in the courts over civil corporations, of which the state is the sole founder and primarily the *visitor*.

According to the facts set up in the information, this visitorial right of the state cannot be fully exercised over this corporation; for its affairs, books, records and officers are outside of the state, and not practically within the jurisdiction of its legislature, its officers or its courts.

According to the civil law, corporations were created in Rome by imperial or senatorial decree, with privileges and franchises limited and well defined, which no merely voluntary associations were allowed to exercise or enjoy, and these corporations were cautiously and constantly kept subject to the laws. Deriving their sole authority from the government, they were called *collegia licita*, in contradistinction to unauthorized bodies, or *collegia illicita*. That such corporations should use their privileges and franchises for the legitimate objects and purposes of their creation, and not usurp powers not expressly granted, and should always be amenable to the laws, were the very foundation principles and conditions of their existence; and in adopting from the civil law the institution of such corporations, England and this country adopted these principles. 2 Kent's Com., 268.

" It is a tacit condition of a grant to a corporation, that the grantees shall act up to the end or design for which they are incorporated; and hence, through neglect or abuse of its franchises, a corporation may forfeit its charter as for condition broken, or for breach of trust. The duties assigned by an act of incorporation are conditions annexed to the grant of the franchises conferred " (Angell & Ames, § 776); " and *duties implied* are equally obligatory with *duties expressed,* and their breach is visited by the same consequences." *Att'y Gen'l v. Petersburg & Roanoke R. R. Co.*, 6 Ired., 456; Field on Corp., § 456, and note.

A corporation is an artificial entity and a fictitious person, and is only endowed with life and the capacity to organize,

to act and be acted upon, to contract and be contracted with, to sue and be sued, to manage its business, perform its functions, exercise its franchises, and accomplish its objects, through *natural* persons, and its personal members and officers, in the corporate name.

Whenever a corporation is created by a state, and nothing further is done, and it performs none of its corporate functions within such state, and its business is done, its principal place òf business and its books and records are kept, and its officers reside, in another state, it may be said to exist in the former state; but such an existence is only fictitious and artificial, while it *inhabits* the latter state, and is for all practical purposes a resident and citizen thereof, and can sue and be sued therein. *Hanna & Finley.v. International Petroleum Co.*, 23 Ohio St., 622; *Runyan v. The Lessee of Coster*, 14 Peters, 122. In *Covington Drawbridge Co. v. Shepherd*, 20 How., 233, in determining whether the corporation was a citizen of the state of Indiana, to give jurisdiction to the federal court, the court said: "Consequently, the Covington Drawbridge Company being chartered by the state of Indiana, *it necessarily has its home and place of business in that state;*" and it held that the mere existence of a corporation in one state, while all its stockholders reside and its business is done in another state, does not make the corporation a citizen of the former state, so as to sue or be sued by a citizen of another state in the federal courts; and that it was necessary to show, in addition to the fact that the company was incorporated by the state of Indiana, *that it had its principal place of business in that state*, to make the corporation a citizen thereof.

The question of the *locality*, residence or citizenship of a corporation, so as to confer jurisdiction upon the federal courts in cases between citizens of different states, has received more attention from the federal courts than from any other; and the nature and duties of a corporation have been more fully considered. It had been held in *Strawbridge v. Curtiss*, 3 Cranch, 267, and in *U. S. Bank v. Deveaux*, 5 id., 84, and several other cases, that the citizenship of the governing or private

members affected the question, and that all such members must be citizens of the state with the corporation, to confer such jurisdiction. And the same principle was followed in *Bank of Cumberland v. Willis*, 3 Sumner, 472, in which Judge STORY held, at the circuit in the district of Maine, " that, to entitle a corporation to sue in the circuit court of the United States, all the members of the corporation must be citizens of a state other than the one of which the defendant is a citizen." In *Louisville R. R. Co. v. Letson*, 2 How., 497, 555, the distinct question was again raised, by a plea to the jurisdiction of the court, that some of the members or stockholders were citizens of South Carolina and others were citizens of North Carolina, and the suit was brought by the plaintiff, who was a citizen of the state of New York, against the corporation in the state of South Carolina. The court, upon very full consideration of the subject, overruled or modified the doctrine of these earlier cases (aside from the statute of 1839 giving the right to sue when some of the parties in interest were citizens and others not), and held " that, in order to found the jurisdiction in cases of corporations, it is necessary that there should be an averment, which, if contested, must be supported by proof, that some of the corporators are citizens of the state by which the corporation was created, *where it does its business, or where it may be sued*, . . . and when the corporation exercises its powers in the state which chartered it, *that* is its residence, and such an averment is sufficient to give the circuit court jurisdiction." In *Marshall v. Baltimore & Ohio R. R. Co.*, 16 How., 314, the averment of the declaration was, " that the defendant was a body corporate by an act of the general assembly of the state of Maryland; " and the question was, whether this was a sufficient averment of the residence or citizenship of the corporation; and the court held that it was, on the ground solely that it was *implied* and *presumed* that the natural persons who control the corporation reside in and are citizens of the state of Maryland, and that " the persons who act under these faculties, and use the corporate name, are resident in the state which is the necessary *habitat* of the corpo-

ration, and *where alone they can be made subject to the laws;*" and the court say further in their opinion, that "the corporation *must dwell* in the place of its creation, and can have no legal existence out of the bounds of the sovereignty by which it is created; that it exists only in contemplation of law, and by force of the law, and *where the law ceases to operate, the corporation can have no existence.*" "A corporation, it is said, is an artificial person, a mere legal entity, invisible and intangible. This is no doubt metaphysically true, in a certain sense. The inference, also, that such an artificial entity *cannot be a citizen,* is a logical conclusion from the premises, which cannot be denied."

In *Bank of Augusta v. Earle,* 13 Peters, 598, where the same question was raised, the court uses, *verbatim,* the same language above quoted, and adds that a corporation "must dwell in the place of its creation," and "*cannot migrate* to another sovereignty."

In *Hill v. Beach,* 1 Beas., 31, it is held that a corporation organized under the general laws of the state of New York to do business exclusively in the state of New Jersey, "is *no* corporation, and a fraud upon the laws of New York." In *Land Grant Railway & T. Co. v. The Commissioners of Coffey County,* 6 Kansas, 343, it is held that a company incorporated in Pennsylvania, not to do business in that state, but elsewhere, "*is no corporation;*" and the court says: "A corporation, in order to have any legal existence, must have a *home,* a *domicile, a principal place of business,* within the boundaries of the state which creates it. It may send agents into other states to do business, but it cannot migrate in a body; *to go beyond the jurisdiction of the laws* which bind and hold it together, it dissolves into its original elements, and the persons who compose it become only individuals." In *Hilles v. Parrish,* 14 N. J. Ch., 383, the court says that, "independent of statutory provisions, it is a rule of law that a private corporation whose charter has been granted by one state, cannot hold meetings and pass votes in another state." In *Conn. Mutual L. Ins. Co. v. Cross,* 18 Wis., 109, it is held,

" that foreign corporations may contract, sue and do any business in this state, if not inconsistent with the laws or policy of the state of their creation." But in *Morse v. The Home Insurance Co.*, 30 Wis., 496, it is held "that such a corporation cannot *do any corporate act* within this state, without its consent."

There can be no doubt that a private corporation may be created by the concurrent act of two or more states *(Bishop v. Brainerd*, 28 Conn., 289); but in such case the residence of the corporation is determined by its general place of business, the residence of its officers, and the place where its books are kept. In *Culbertson v. The Wabash Navigation Co.*, 4 McLean, 544, the corporation was created by the states of Indiana and Illinois. The stockholders resided in both states, and the works of improvement were in both. The plaintiff was a citizen of Pennsylvania, and the suit is brought in the circuit court of the United States for the district of Indiana. The court upon the facts decided the residence and citizenship of the corporation to be in the state of Indiana, on the following grounds: " that the act was first passed by Indiana, the company was organized in it, the president and secretary have constantly resided in Indiana, and a majority of the directors, and their principal business, at least, has been done at Vincennes, the residence of the president and secretary, the books of the company are kept at Vincennes, Indiana, which is the general place of meeting, and where the business of the directors is partially done; " and the court says in reference to the case in 2 Howard above cited: " By the decision of that case, the right of a corporation to sue in the courts of the United States as a citizen of the state *in which its business is done*, is recognized, without regard to the citizenship of the stockholders; " thus using the term " business " as meaning the general management of its affairs, and not the works of improvement made. In *Jenkins v. The California Stage Co.*, 22 Cal., 537, the question was, in what county the corporation *resided*, in which to bring suit against it, and to determine the place of trial. The action was brought in Nevada county,

and application was made to change the venue to Yuba county, on the grounds that *the principal place of business* of the company was in Yuba county, and that therefore *that* was its residence, under the practice act.  The court says: "The modern decisions very generally concur in giving corporations a local existence, like persons, and hold them to be properly included within the terms, citizens, inhabitants and residents, and the like [citing 2 How., 497].  Every corporation has some locality where *its principal office or place of business is established,* and it may very properly be said to reside in such locality."  In *Thorn v. The Central R. R. Co.,* 26 N. J. Law, 121, the same question arose, and was decided on the same grounds, and the court says: "In the absence of any rule prescribed, there would seem to be propriety in holding that, for the purpose of laying the venue, *the principal* office or place of business of a corporation is technically the place of the corporation's residence; ordinarily *its books are there;* its directors and executive officers meet and transact its business there.  Its residence may certainly be with more propriety said to be there, than any other place, and it would seem to be incongruous to hold that it is an *inhabitant* of the state, that it is not a *nonresident,* and yet has *no residence in* the state."  In *Miller v. Ewer,* 27 Maine, 509, the court holds that the laws relating to manufacturing corporations in that state virtually required " the establishment and action of manufacturing corporations to be *within* the state; that their meetings were to be called, and their officers to be chosen by virtue of the laws of the state, and of course *where these laws were operative;* that the officers, and especially the clerk was to be within the state, and that he was to have the *custody of the books and records,* to perform the duties required of him."  The laws named as so requiring were, that notice should be published in the county where the corporation is established, of the amount of capital stock paid in; that the officers having charge should furnish an officer having a writ of execution, the names of the directors and clerk, and a schedule of its property, including debts; that the clerk, or person having charge of the

books, should produce the same in court when certain suits were pending. Other provisions existed, respecting the mode of calling meetings, the liability of stockholders, the way of collecting debts from the property of the corporation, and requiring the clerk to furnish the names and residence of the stockholders. It was held that these general provisions required the establishment and action of these corporations to be within the state, and that all of their corporate acts should be done in the state; but it is also held that such corporations could make contracts, execute deeds, and do like acts, in other states, by its officers and agents, like private persons. It will be noticed that these general provisions relating to manufacturing corporations in that state are nearly parallel to the provisions we have already cited from the statutes of this state, in respect to private corporations and railroad corporations created by this state; which gives more authority to this case upon this question; and the same conclusions seem to be inevitable.

The authorities cited by the learned counsel of the defendant, although most ingeniously construed, do not appear to militate against the conclusions already reached. *McCall v. The Byram Manf'g Co.*, 6 Conn., 429, upon casual reading, might well be mistaken as holding that corporate acts may be done outside of the state in which the corporation was created. The case, in brief, is, that it was a corporation of Connecticut; the directors were chosen and appointed a secretary in the city of New York; and the secretary resided and kept his books and records in that city. Being in the state of Connecticut, an attachment was served upon him there. The only question raised or decided was, whether the directors could meet in New York and elect or appoint a secretary there; and it was held that, under the charter and by-laws, they might, but the court also holds that, "if the duties of the office were of perpetual recurrence, requiring perpetual residence in Connecticut, his total absence from that state would be good ground of removal." The question of the legality of the election of the directors outside of the state is

not noticed, or their right *de jure*, and could not properly arise thus collaterally; it was sufficient for that case that they were directors *de facto*. This case is noticed and examined in Angell and Ames on Corp., § 104. In *Arms v. Conant*, 36 Vt., 744, it is held that the board of directors might meet outside of the state and appoint an agent to execute a deed, and in so doing they did not do a *corporate act*, strictly, but acted only as the agents of the corporation in making contracts. In 35 Mo., 13, the court approves the doctrine of *Miller v. Ewer*, 27 Maine, but distinguishes that case from the one under consideration, and holds that in that case, as the act of incorporation appointed the first board of directors, such directors might act outside the state in making calls upon stock, and that their power so to do could not be questioned by the respondent, as he was estopped by his consent. In *Wright v. Bundy*, 11 Ind., 398, it is only decided that directors were the agents of the corporation, and might meet outside of the state to make contracts. *Galveston R. R. v. Cowdrey*, 11 Wall., 476, decides only, that the directors might execute a mortgage outside of the state, to secure the *bona fide* holders of the bonds of the company, and that such act was not strictly a corporate act, but a contract made by agents, and that the corporation is estopped from questioning it, even if wrong.

*Mumford v. Am. Life Ins. Co.*, 4 N. Y., 463, decides only that a corporation may make contracts outside of the state. *Bard v. Poole*, 12 N. Y., 495; *New York Floating Derrick Co. v. N. J. Oil Co.*, 3 Duer, 648; *The Wood Hydraulic H. M. Co. v. King*, 45 Ga., 34; *Copp v. Lamb*, 12 Maine, 312; *Smith v. Alvord*, 63 Barb., 415, only consider the power to make contracts outside of the state. In *Railroad Co. v. Harris*, 12 Wall., 65, it is held, that when a railroad company of one state is authorized to act as a corporation in another state, by the laws of the latter state, or is incorporated also by such state, its residence is in either state where it does its business.

The further consideration of this question may well be concluded by the statement of the law, as gathered from the au-

thorities by that eminent jurist and law writer, Judge Redfield, in a note to Redfield on Railways, § 17 a.

"The law seems so entirely well settled, that corporations created by one sovereignty cannot so transfer their locality as legally to exist and act in their organic, corporate capacity in another sovereignty, that it appears very singular that such multitudes of speculative joint-stock corporations, deriving their charters from the legislature of the state, should attempt to transfer their entire local action to another sovereignty and jurisdiction. For there is no principle better settled, than that the locality of a business corporation is determined by that of *its principal business* office. And there are unquestionably hundreds of business corporations chartered by the legislature of one state, having their principal and only business offices in other states. This is done, doubtless, by holding the stockholders' meetings in the states where the charters were obtained, and appointing a board of directors with full powers, and thus carrying forward the business of the company through the agency of the board of directors themselves. But that seems scarcely less than an *evasion;* and though it may be held binding upon the members of the company, so long as acquiesced in by them, it might at any time be enjoined by proceedings in equity."

*By the Court.* — The demurrer is overruled, and the defendant has leave to answer within ninety days.

RYAN, C. J., took no part.

A motion by the defendant for a rehearing was denied.