Klein vs. Valerius and another.

KLEIN, Respondent, vs. VALERIUS and another, Appellants.

*January 12 — January 30, 1894.*

Supreme court: Jurisdiction: Review of evidence, etc.: Constitutional law.

Under the constitution the supreme court has appellate jurisdiction only, except in specified cases. Sec. 2, ch. 242, Laws of 1893, provides that the supreme court shall review all questions of law or fact presented by the record upon an appeal or writ of error, and shall "examine and review the evidence when the same is preserved by a bill of exceptions, and give judgment according to the right of the cause, regardless of the decision upon questions of fact or law made by the court below, according to law and equity." *Held,* that in so far as said section attempts to make it the duty of the supreme court to decide questions as a court of original jurisdiction, it is invalid.

APPEAL from the Circuit Court for *Jefferson* County. This action was commenced November 13, 1889. The complaint alleges, in effect, that the defendants have been partners since June 1, 1886, doing business at Watertown; that between June 17, 1886, and December 6, 1888, the defendants, at sundry and divers times, borrowed money of the plaintiff, and purchased horses and hay of him, which money was delivered by the plaintiff to the defendants, and which horses and hay were sold and delivered by the plaintiff to the defendants at their request, to the amount of $2,377.03. Judgment is demanded for said sum with

Klein vs. Valerius and another.

costs. A bill of particulars is annexed to the complaint, covering the time between the dates named, amounting to $4,277.30, including $2,000 cash loaned to the defendants June 17, 1886, $300 cash loaned to the defendants June 28, 1886, and $800 cash loaned to the defendants September 10, 1886.

The defendants admitted the partnership of the defendants, and alleged, in effect, that between September 20, 1886, and April 1, 1889, they borrowed of the plaintiff $80, and bought of him one horse at the agreed price of $125, and also bought of him 16,325 pounds of hay at the agreed price of $8 per ton; but that long before the commencement of this action they repaid to the plaintiff the $80 so borrowed, and also paid him in full for said horse and said hay. Otherwise they denied each and every allegation contained in the complaint. The answer also alleged, by way of counterclaim, in effect, that between November 1, 1886, and April 1, 1889, the defendants, as such partners, sold and delivered to the plaintiff, at his request, several pieces of property mentioned, and paid to him, or for his benefit, and at his request, several items of cash, amounting in the aggregate to $1,849.55; that no part thereof had been paid, except $271.28; and prayed judgment for the balance of $1,578.27, with a bill of particulars annexed to said answer.

The cause was referred to George Grimm, as sole referee, to hear, try, and determine the action. After hearing the witnesses, evidence, and proofs of the respective parties, and the arguments of their respective attorneys, pursuant to notice given, on June 11, 1892, the said referee made and filed his report, wherein he found as matters of fact, in effect: (1) That from May 1, 1885, to the commencement of this action, the defendants were partners, doing business at Watertown. (2) That the moneys described and charged in the plaintiff's bill of particulars, to wit, June 17, 1886,

cash loaned to defendants, $2,000; June 28, 1886, cash loaned to defendants, $300; and September 10, 1886, cash loaned to defendants, $800,— were loaned by the plaintiff to the defendants, and were borrowed by the defendants of the plaintiff, with the mutual understanding that said sums should be repaid at the expiration of eight months. That the plaintiff so loaned to the defendants said money for the purpose of using the same in one certain exportation and importation of horses to be made by the defendants in the summer of 1886, with the mutual understanding that the same should be repaid at the end of the time necessary to complete such exportation and importation, which was fixed at eight months, and, in case said trip should be successful,— that is to say, profitable to the defendants,— then the plaintiff should receive a horse for the use of his money, and, if not successful, then he should receive nothing for its use. (3) That said trip was not successful, within the meaning placed upon that word by the parties, and that the defendants sustained a heavy loss, the amount of which the referee does not determine, as he deemed it immaterial. (4) That defendants were indebted to the plaintiff in the other sums set out in the plaintiff's bill of particulars, with the exception of the item under date of December 6, 1886, cash $300, which he finds was paid by the defendants with the Farlow note of $400, and the balance of $100 charged by defendants against plaintiff; and with the exception of the last item on the plaintiff's bill of particulars, under date of December 6, 1886, one stallion, $300, which he finds should be $275, and which he further finds was paid by the defendants with the Wassow note of $575, and the balance of $300 charged to the plaintiff by the defendants,— making the aggregate sum owing the plaintiff by the defendants $3,677.30. (5) That the plaintiff is indebted to the defendants upon their counterclaim in the sum set out in their bill of particulars, to wit, the sum of $1,849.55, and that the

final balance due the plaintiff from the defendants upon said accounts is $1,827.75. As a conclusion of law the referee found that the plaintiff is entitled to judgment against the defendants for the sum of $1,827.75, with interest thereon from May 10, 1887, at the rate of seven per cent. per annum.

On September 5, 1892, the plaintiff moved the court to confirm said report and for judgment in accordance with the findings therein. At the same time the defendants moved the court to alter and modify said findings of fact and conclusion of law. On March 27, 1893, the court confirmed the report of the referee and ordered judgment for the plaintiff and against the defendants in accordance with said report and findings, with proper costs and disbursements; and thereupon, and on the same day, judgment was entered in favor of the plaintiff and against the defendants for the sum of $2,774.30, damages and costs. Defendants appeal.

*Harlow Pease,* for the appellants.

For the respondent there was a brief by *W. H. Rogers,* attorney, and *L. B. Caswell,* of counsel, and oral argument by *Mr. Caswell.*

CASSODAY, J. The plaintiff married the mother of the defendants in 1868, when the defendants were quite young. The boys both left home before they were sixteen years of age, and went to work for themselves. After they had accumulated a little money, and as early as 1884, the defendants, or one of them, went to Europe, bought some horses, shipped them to this country, and sold them. In the spring of 1885 they located at Watertown, and went into the business of buying and selling both imported and American horses, mostly for breeding purposes, but also on commission. The business of buying horses in Europe and shipping them to this country and selling them, by the defendants, appears to have been continued during the years

1886, 1887, and 1888. It is undisputed that the plaintiff from time to time let the defendants have money to be used in such business. It would seem that some of the moneys so put in by the plaintiff were by way of a joint venture for a particular trip, whereby he was to have a certain share of the profits of the venture. It is conceded that the plaintiff let the defendants have, in June and September, 1886, the three items of cash mentioned in the findings, aggregating $3,100, to be used by the defendants in buying horses in Europe, and shipping to this country and selling the same. The defendants contend that the plaintiff so paid in the amount named in pursuance of an agreement or understanding that the defendants should put about $6,000 in for the same trip; and that if the trip should turn out to be successful then the plaintiff should have his money back and one horse as his share of the profits; but in case the trip should turn out to be unsuccessful and a loss should occur then the plaintiff was to stand his share of the loss in proportion to the respective amounts of money invested in such venture, and that the same should be deducted from the amount so advanced, and the plaintiff only to be paid the balance. On the other hand, the plaintiff claims that the amount of money named was loaned by the plaintiff to the defendants; that if the trip was successful he was to receive one of the horses for the use of his money, but that the amount thereof was to be returned to him within eight months in any event, as found by the referee. The question for determination is, Which of these two theories is correct?

The evidence is voluminous and conflicting. The determination of the question presented necessarily depended upon the credibility of the respective witnesses. The plaintiff appears to be a German, who speaks the English language very imperfectly, if at all. It appears also to be conceded that the referee was a lawyer of ability, thoroughly

conversant with both the German and English languages, and personally acquainted with the parties and their witnesses. He possessed opportunities for determining the credibility of the witnesses and the proper weight to be given to their testimony, which, from the very nature of things, this court cannot have. After full and apparently very deliberate consideration, the referee's report was wholly confirmed by the trial court. A detailed discussion of the evidence would only incumber the reports without being of any benefit to any one. It is enough to say that after a very careful examination and consideration of the whole record we have all come to the conclusion that the findings of the referee are sustained by the evidence. Certainly we cannot say that there is such a clear preponderance of the evidence against the findings as would justify a reversal.

It is suggested, however, that the recent amendment to sec. 3070, R. S., by sec. 2, ch. 242, Laws of 1893, makes it the "duty" of this court to review "all questions of law or fact presented by the record upon such appeal or writ of error," and "to examine and review the evidence when the same is preserved by a bill of exceptions, *and give judgment according to the right of the cause, regardless of the decisions upon questions of fact or law made by the court below,* according to law and equity." This court has always sought to review "all questions of law or fact" properly presented for review by the record upon appeal or writ of error. It has, moreover, always sought "to examine and review the evidence when the same is preserved by a bill of exceptions" in a manner authorizing and calling for such examination and review, according to the established rules of "law and equity." Accordingly, this court has never felt bound by the findings of the trial court regardless of the weight of evidence in an equitable action or an action tried by the court without a jury, or even the verdict of a

Klein vs. Valerius and another.

jury in an equitable action upon a feigned issue, whenever the record has properly presented the question of such weight of evidence, " according to law and equity." It has been suggested that the portion of the statute quoted was intended to impose upon this court the duty of examining and reviewing all questions of law or fact presented by the record upon such appeal or writ of error, and giving judgment as a court of original jurisdiction, according to the right of the cause, regardless of the decision of the trial court upon questions of *fact or law.*

Undoubtedly, within certain limits, the legislature has power to regulate the practice of this court; but it must be remembered that this court, as well as the legislature, gets its judicial power and jurisdiction directly from the constitution. That instrument declares that "the judicial power of this state, both as to matters of law and equity, shall be vested in a supreme court, circuit courts, courts of probate, and in justices of the peace." Sec. 2, art. VII. It moreover declares that "the supreme court, except in cases otherwise provided *in this constitution,* shall have *appellate jurisdiction only,* which shall be coextensive with the state; but in no case removed to the supreme court shall a trial by jury be allowed." Sec. 3, art. VII. The case at bar is not one of those otherwise provided for in the constitution, and hence is not within the exception mentioned. In fact, there are very few cases which do come within that exception. The duties of this court are confined almost wholly to an exercise of its appellate jurisdiction.

The constitution provides that "the right of trial by jury shall *remain* inviolate; and shall extend to all cases at law." Sec. 5, art. I. This court has uniformly held that this language imports that such right must remain as it existed when the constitution was adopted. *Norval v. Rice,* 2 Wis. 22; *Gaston v. Babcock,* 6 Wis. 503; *Mead v. Walker,* 17 Wis. 189; *Connecticut Mut. L. Ins. Co. v. Cross,* 18 Wis.

109; *Crocker v. State*, 60 Wis. 555. In *State v. Cameron*, 2 Pin. 499, Stow, C. J., said: "The trial by jury as it existed of old is the trial by jury secured by our national and state constitutions. It is *not granted* by these instruments; it is more,— it is *secured*. It is no American invention. Our fathers brought it with them to this country more than two centuries ago, and by making it a part of the constitution they intended to perpetuate it for their posterity, and neither legislatures nor courts have any power to infringe even the least of its privileges." That language was quoted approvingly by RYAN, C. J., in *In re. Eldred*, 46 Wis. 553, and it was again quoted in *Jackson v. State*, 81 Wis. 131. The writ of error mentioned in the act is to review the record properly made upon such a trial, and the constitution provides that in actions at law "writs of error shall never be prohibited by law." Sec. 21, art. I. *State ex rel. Larkin v. Ryan*, 70 Wis. 683. It has been held that the legislature cannot authorize appeals to this court in certain cases from orders of circuit judges at chambers. *Hubbell v. McCourt*, 44 Wis. 584. To the same effect, *State v. Brownell*, 80 Wis. 563.

In *Oatman v. Bond*, 15 Wis. 20, the writer of this opinion attempted to sustain the validity of a legislative enactment which authorized, in a certain class of equity cases, a compulsory reference to take testimony, and gave a jury trial as a matter of right, and in some respects changed the established rule of procedure, the effect of evidence and judgment in such cases, and provided that certain matters not incorporated in the bill of exceptions should be considered by this court the same as though they were so incorporated; but the court properly held the enactment to be a nullity. So, a statute requiring every issue of fact in an action to foreclose a mortgage executed to a corporation to be submitted to a jury on demand of either party was held

to be invalid. *Truman v. McCollum*, 20 Wis. 360. In *Callanan v. Judd*, 23 Wis. 343, counsel sought to maintain the validity of a legislative enactment requiring foreclosure cases, unless otherwise stipulated by the parties, to be tried by a jury, and giving the verdict the same force and effect as in actions at common law; but the act was held to be invalid, for the reason that the determination of questions of fact in such cases must remain as at the time of the adoption of the constitution. In *Deery v. McClintock*, 31 Wis. 195, it was held that under the provisions of our state constitution, cited, the legislature cannot take anything from the original or primary jurisdiction of equity, and give it to the law, or the reverse. It may be added that much less can the legislature take anything from the original jurisdiction of the circuit courts and give the same to this court in cases in which it has only appellate jurisdiction.

We must hold that, in so far as sec. 2, ch. 242, Laws of 1893, has attempted to give this court original jurisdiction in cases in which, under the constitution, it only has appellate jurisdiction, the same is null and void. This leaves the statute on that subject essentially the same as it was in sec. 3070, R. S.

Counsel contends that upon the findings of fact the referee and trial court improperly allowed interest upon the balance due the plaintiff upon the accounts between the parties. But the referee found, in effect, that the $3,100 was loaned to the defendants with the mutual understanding between the parties, had in June, 1886, that the moneys so loaned "should be repaid at the expiration of eight months." It therefore became due at the end of the eight months, and would draw interest thereafter without any agreement. Besides, it appears from the defendants' bill of particulars that the amount was not very materially re-

duced by payments until long after the expiration of the eight months. We find no error in the record.

*By the Court.*— The judgment of the circuit court is affirmed.

See note to this case in 22 L. R. A. 609.— REP.

