The decree reads as follows:
The petitioners in the above-stated case are stockholders of the Langley Mills, owing some of its first preferred stock; a larger amount of common stock, and a very considerable portion of second preferred stock. As such stockholders they brought this petition for mandamus against the defendant corporation and against George E. Spofford, he being the only one of its directors who is a resident of the State of South Carolina. The material allegations of the petition are as follows:
That the defendant the Langley Mills is a corporation organized and doing business under the laws of the State of South Carolina, its charter having been granted pursuant to the laws of the said State on the 11th of June, 1915. The principal place of business of said corporation, as fixed by its charter, is Langley, Aiken County, S.C. The defendant *Page 181 
George E. Spofford is vice president of the Langley Mills, and lives at Langley, S.C. The president of the Langley Mills is W.C. Langley, who lives in the City and State of New York. Said Langley is financially interested, and largely so, in the corporation of W.H. Langley Co., of New York: the business of said corporation being that of brokers and agents for cotton mill goods. The said Langley is an officer and director of said W.H. Langley Co., and is also a director and president of the Langley Mills, the Aiken Mills, the Seminole Mills, and Anderson Cotton Mills; the last four being corporations of the State of South Carolina. The entire manufacturing plant of the Langley Mills is located at Langley, S.C. which the charter designates as the principal place of business of said corporation. Following the foregoing averments of fact, which are undisputed, the petition alleges that a record of the corporate affairs of the Langley Mills should be kept at Langley, S.C. and that the books of said corporation should be kept there so as to be available for inspection by stockholders at "all times," as provided by Section 2855 of Civil Code of South Carolina (1912) which is as follows: "Books Opened to Inspection. The books of any corporation organized under this article shall be kept open to the inspection of any stockholder at all times." Said the Langley Mills was incorporated under the article referred to in said quoted section of the Code (Section 2855).
Despite the alleged duty to keep said books and records at Langley, S.C. and in disregard of the asserted right of petitioners to inspect them there at all times, it affirmatively appears from the petition that the principal books and records of this South Carolina corporation, the Langley Mills, are kept in the City of New York in offices controlled by W.H. Langley Co., and used jointly by that corporation and the four cotton mill corporations (of South Carolina) which it controls. *Page 182 
On September 18, 1920, Wm. E. Bush Co., petitioners in this case, who own 391 shares of the second preferred stock, had their attorneys address a letter to the Langley Mills, at Langley, S.C. reading as follows: "We write in behalf of Messrs. Wm. E. Bush Co., of Augusta, Georgia, who are, as you know, the owners of second preferred stock in your corporation. Messrs. Bush Co., as such owners, desire to inspect through competent and worthy accountant, your books, in order to ascertain the true financial condition of the corporation at this time as bearing upon their rights as owners of such second preferred stock; also for the purpose of ascertaining the relationship between you and your selling agents, covering compensation, terms of contract, and the like; also to ascertain who, if any, of your corporate officers are acting directly or indirectly, as or in connection with such selling agent, or agents, and whether or not any of them are participating in the benefits of such representation, and to what extent, over and beyond the salaries paid them as officers of your corporation: and to further ascertain in this way other facts as revealed by your books and to which they, as owners of such stock, are entitled. This right, we understand, is provided for distinctly by statute of South Carolina. We write this in advance, however, to request that you will indicate at what times it will be most convenient for you to have such inspection made. A prompt answer is requested."
The above communication was forwarded to W.C. Langley, president, at New York, who acknowledged receipt of same and later, on September 28, 1920, replied as follows: "Further in answer to you letter of September 18th, I have to advise you that it will be convenient for us to have your accountants examine the books of the Langley Mills at the office of the treasurer, 77 Worth Street, New York City, as soon as you can arrange to do so, but not later than October 10, 1920. We ask that this examination be made prior to October 10th, as we shall be busy *Page 183 
from that time on taking inventories and making up our statement for the last three months as well as with other matters."
The attorneys for the petitioning stockholders next wrote that for the purpose of examination they expected the books of the Langley Mills to be made available at the office of the corporation in South Carolina to which Langley, as president of the Langley Mills, replied: "With reference to your suggestion that the books be made available completely at the office of the mills in South Carolina, I regret to have to advise you that this is out of the question."
Petitioners allege that said books should be kept at all times at the principal place of business of the Langley Mills at Langley, S.C.; that they are entitled, under the laws of this state, to inspect said books at all times, and that such right cannot be circumvented or denied by keeping the books outside the limits of the state.
The last annual meeting of the stockholders of the Langley Mills was held on March 8, 1921, at the office of said Mills at Langley, S.C. No financial statement as to the affairs of the corporation was submitted at said meeting, the entire report of the treasurer being as follows:

Profit for the first six months of the year ____ $369,896 77
Loss for the last six months of the year _______ 469,746 64
 ___________
Net loss _______________________________________ $ 99,849 87

Some of the petitioners in this proceeding, who were present at said meeting, endeavored to secure the passage of a resolution requiring that the books of the company be kept at the office of the company at Langley, S.C. That failing, they made written demand that the boo's be made available for inspection at the office of the company at Langley, S.C. but such demand was likewise refused. Following such refusal to either keep or produce the books for inspection at the office of the corporation in this State, said petitioners, stockholders at an annual stockholders' *Page 184 
meeting, propounded to W.C. Langley, president, the following questions, and received the following replies:
"Question No. 11. Is it not true that a number of selling agents of cotton mills throughout the South perform the services of selling their goods at a smaller commission than is paid by the Langley Mills, to its selling agent? If so, why do the mills pay their selling agent a larger commission than is paid the agents of many other mills in the South? A. I do not see any reason why I should answer that question.
"Question No. 12. Who, if any, of the officers, directors, or stockholders of the Langley Mills are interested in the selling agent of the Langley Mills as stockholders, directors, officers, or likewise? If there be such, to what extent does each of them participate in the profits of such selling agent? A. The same answer as to No. 11.
"Question No. 13. What salary is paid to each of the officers who participate in the profits of the selling agent, if any? A. I refuse to answer that question. If you want to ask what salaries are paid our officers I will answer it.
"Question No. 14. What have been for each year the aggregate commissions paid by the Langley Mills to the selling agent since the organization of the said mills? A. That would simply be an approximation, unless we went to the books.
"Question No. 15. Will you furnish us that information? A. If you want to examine the books in New York, we will give you that information prior to your examination. If you insist on examining them down here, we won't give it to you."
The foregoing facts, the petition avers, show an astounding disregard for the rights of petitioners on the part of the managing officers of the Langley Mills. Together with other facts alleged in the petition, including duplication of directors and an issue as to the retirement of first preferred stock, they disclose a relationship existing between the *Page 185 
Langley Mills and W.H. Langley Co., its selling agent, which the petitioners contend is sufficient to entitle them to demand, irrespective of any statute, the right to inspect the books and records of the Langley Mills at the office of said company at Langley, S.C. free from influence and surroundings of the office organization of W.H. Langley Co., in the City of New York. Thus it is contended that in the petition that petitioners are entitled, both by common law and by statute of this state, to a full, free, and unhampered inspection of the books of the corporation at the place of its principal office at Langley, South Carolina.
I have given careful consideration to the answer and supporting affidavits filed for defendants. I find no real conflict as to the facts set forth above, although there is disagreement as to the conclusions drawn therefrom and the rights claimed by the respective parties. In the sixth paragraph of the answer it is admitted: "That W.H. Langley Co., having its office at 77 Worth Street, does a business of selling goods on commission for cotton mills, and that all of the mills for which it does business have their offices in the office of W.H. Langley Co., that all of their books are kept in a manner similar to the books of the Langley Mills for the purposes and reasons set forth in the affidavits hereto annexed." Among the affidavits annexed to the answer is one by George E. Leonard, secretary and treasurer of the Langley Mills, who lives in the City of New York. From his affidavit it appears that the ledger, combination journals, cashbook, and stock books of the Langley Mills are kept in the office of the treasurer at 77 Worth Street, that being the office also occupied by W.H. Langley Co., and the other cotton mills which it represents as selling agent. It further appears from said affidavit that certain books and records pertaining primarily to the cost and incidents of manufacture are kept at the principal office of the corporation at Langley, S.C. Said affidavit then proceeds as follows: "That *Page 186 
there can be ascertained from the books and records kept in the office of the company at Langley, S.C. all of the memoranda in detail which appear in the books kept in New York City, with the exception of the details of the overheard charges such as officers' salaries, directors' fees, interest paid in New York, salaries paid to New York bookkeepers, auditors, etc., and expenses made at the New York office." It is hardly necessary to comment on the extent or importance of these exceptions.
Another affidavit attached to defendants' answer is that of J.F. Sofge, assistant secretary and treasurer of the Langley Mills, the Aiken Mills and the Seminole Mills, who as such officer keeps an office at Langley, S.C. Said deponent gives a list consisting of 15 items, of the books and records at Langley Mills which are kept by him at Langley, S.C. Immediately following said list deponent avers "that the trial balances mentioned in the twelfth item above, and some of the other items, are furnished to him from the office of the treasurer in New York."
At the hearing before me, petitioners introduced an affidavit of J.C. Self, one of the petitioners herein, reading in part as follows: "Personally comes before me J.C. Self, who first being duly sworn says that he has read the affidavit of J.F. Sofge, assistant secretary and treasurer of the Langley Mills, in which he states that certain books and documents can be found in the office of the mill, numbered 1 to 15, inclusive; that this list is incomplete, in that it does not include the main or general ledgers from which alone a stockholder can form some idea of the management and value of the property. Deponent further says that he has frequently heretofore tried to get information from the management of Langley Mills in reference to its business and financial affairs, but with very unsatisfactory results."
Attached to said affidavit are copies of five letters written by Mr. Self to the treasurer of the Langley Mills at New York, asking information, to which he, as a stockholder, *Page 187 
was unquestionably entitled. Mr. Self's last letter, dated September 21, 1920, was as follows: "I have yours of the 15th inst., inclosing statement of the Langley Mills, and for which please accept thinks. You did not advise us in connection with the amount of dividends on the preferred stock, and I will be very glad for you to furnish me with this information; also as to the amount of your earnings for the fiscal year. I have no previous statement, and of course, have no way of ascertaining this. I would also appreciate it if you will advise me as to the amount of commission you pay for the sale of your goods, salaries paid your officers, and number of spindles and looms, with styles of goods you manufacture. Thanking you for this information and with kindest regards."
The reply to said letter was written by W.C. Langley, president, from his office in New York, and was as follows: "Your letter addressed to Mr. Geo. E. Leonard, of September 31st, has been handed to me. As Mr. Leonard has already furnished you with a sworn balance sheet of the Langley Mills and given you in considerable detail financial reports thereon I feel that you have all the information which is necessary to give you a true picture of the condition of this company, and which you have a right to ask us for, except such information as can be gained by an examination of the books, or at a stockholders' meeting."
From a consideration of the undisputed evidence of this case I find as follows: That the books and records kept at the office of the Langley Mills at Langley, S.C. are not sufficient to furnish full and complete information as to the affairs and financial condition of said corporation; that on common-law principles, as well as under the provisions of Section 2855 of the Civil Code of South Carolina, petitioners in this case, as stockholders of the Langley Mills, are entitled to inspect all its books and records at the principal office of said corporation in this state. Although there seems to have been no previous construction of the South *Page 188 
Carolina Statute on this subject, the authorities elsewhere are in almost unanimous accord on the principles involved, a few of them being briefly cited below:
"A stockholder in a corporation has in the very nature of things and upon principles of equity and good faith and fair dealing the right to know how the affairs of the company are conducted and whether the capital of which he has contributed a share is being prudently and profitably employed. In most of the states, as well as in England, the right of a stockholder to inspect the books of a corporation has also been secured by statute, and in some cases the right has been made the subject of constitutional provision. It is sometimes said of these statutes that they are merely declaratory of the common law. It is generally conceded, however, that they materially enlarge and extend the common-law rule, and do not simply affirm it. The mere fact that inconvenience will result to the company from an inspection of its books is not a ground for a denial of the stockholders' right. And the fact that a stockholder bears unfriendly relations toward the officers of the company does not justify a denial of his right to examine its books." 7 R.C.L., 322-323.
Where a statute gives to stockholders the right to examine corporate books, mandamus seems to be granted as a matter of right. 2 Cook on Corporations, § 514.
In the case of Guthrie v. Harkness, 199 U.S. 148,26 Sup. Ct., 4, 50 L.Ed., 130, 4 Ann. Cas., 433, the Supreme Court of the United States upheld the authority of a State Court to enforce by mandamus the common-law right of a stockholder to inspect the books of a national bank.
Where an inspection is proper and necessary, the Courts can compel a corporation, existing under the laws of the state, and hence within the jurisdiction of its Courts, to produce books in the possession of its officers outside the state. 14 Corpus Juris, 862. *Page 189 
In the case of State ex rel. Brumley v. Jessup Paper Co., 1 Boyce, 379, 77 Atl., 16, 30 L.R.A. (N.S.), 290, the right to require a domestic corporation to bring its books into the state for inspection by stockholders was granted under the common law; no statute being involved in that case. In the opinion the Court said: "A corporation existing under the laws of this state is within the jurisdiction of its Courts, and if there is a legal duty resting upon it to do a certain thing, it cannot escape liability by showing that the duty is primarily upon certain officers who reside outside of the state."
In the case of State ex rel. DeJulvecourt v. Pan AmericanCo., 5 Pennewill, 391, 61 Atl., 398, 63 Atl., 1118, the writ of mandamus was directed against the defendant corporation and its resident director, Ralph G. Lupton, to enforce the right of a stockholder to inspect the books and records of the corporation.
In the State of New Jersey, by virtue of Corporations Act, § 44, the Court of Chancery, or the Supreme Court, or any justice thereof, may, upon proper cause shown, summarily order any or all of the books of every domestic corporation to be brought within the state and to be kept therein at such place and for such time as may be ordered. In discussing said section in the case of Hodgens v. UnitedCopper Co. (N.J. Sup.), 67 Atl., 756, Fort, J., speaking for the Court said: "It was undoubtedly the purpose of the section to give to a stockholder, under the order of the Court, or to the Court, for its own purposes, authority and power to require the books to be produced within the state for examination. This power, I think, existed outside ofthis statute, at common law, by mandamus; and mandamus is undoubtedly a proper remedy, even where the summary order of a justice might answer the purpose." (Italics mine.)
Where a domestic corporation is required by statute to keep its books within the state, mandamus is a proper *Page 190 
remedy to compel it to bring its books within the state so that a stockholder may inspect the same. Crown Coal Co.v. Thomas, 60 Ill. App., 234.
It would seem to follow that where a statute gives the right to inspect books, the Court should grant the available remedy of mandamus to compel the production of the books for inspection within the state. Otherwise, the statute could be circumvented and rendered of no avail by keeping the books beyond the limits of the state. To admit that the books can be kept in New York is to admit that they can be kept in California or Calcutta. And how could the South Carolina statute be enforced under those circumstances?
It should be remembered that Section 2855 of the South Carolina Code (1912) provides that "the books of any corporation organized under this article shall be open to the inspection of any stockholder at all times." Such statute can have no extra-territorial effect; its enforcement, therefore, depends upon the books being kept in South Carolina within the jurisdiction of its Courts.
From the recent article on Corporations, 14 C.J., 377, the following is quoted:
"Place of keeping. Corporations must comply with the statutes which have been enacted in some jurisdictions requiring them to keep their books or particular books within the state, or in the city or town where they are located or have their principal office or place of business. And it has been held independently of statute that it is the duty of a private corporation to keep its principal place of business, its books and records, and the residence of its officers in the state in which it is incorporated, to an extent necessary to the fullest jurisdiction and visitorial power of the state and its Courts, and the efficient execution thereof in proper cases, and that a forfeiture may be adjudged for violation of this common-law obligation." (Italics mine.) *Page 191 
In the case of Simmons v. Norfolk Baltimore SteamboatCo., 113 N.C. 147, 18 S.E., 117, 22 L.R.A., 677, 37 Am. St. Rep., 614, Shepherd, C.J., rendering the opinion of the Court, said: "It has been held without reference to any express provision of law or specific requirement of the charter, that it is the duty of a corporation to keep its principal place of business, its books and records and its principal offices within the State which incorporated it, to an extent necessary to the fullest jurisdiction and visitorial power of the state and its Courts, and the efficient exercise thereof in all proper cases which concern said corporation. State v. Milwaukee, etc., Ry. Co.,45 Wis. 579."
The single headnote in the case of State v. Park NelsonLumber Co., 58 Minn., 330, 59 N.W., 1048, 49 Am. St. Rep., 516, is as follows: "Independently of statute, it is incumbent upon a private corporation to keep its principal place of business, its books and records, and its principal offices, in the state in which it is incorporated, to an extent necessary to the fullest jurisdiction and visitorial power of the state and its Courts, and the efficient exercise thereof in all proper cases. A forfeiture of its charter may be adjudged for a violation or failure to substantially comply with such obligation."
From the opinion in said case it appears that the defendant corporation kept an office within the state at a town called Red Wing, where the secretary and treasurer kept certain books, papers, and records, including monthly statements and balances of the corporation sent him by a person outside of the state who seemed to perform the real functions of secretary and treasurer. Commenting on this situation the Court said: "While it is claimed by its counsel that from these monthly statements or balances the exact condition of its business and financial standing can be readily ascertained, as fully as if all its account books were produced, we think the Red Wing secretary and treasurer *Page 192 
appreciated the situation when on being asked if these statements or balances would show the financial standing and business condition of respondent at the end of each month, he promptly replied: "Assuming them to be correct, they would."
In the case at bar the important books and records of the Langley Mills, a South Carolina corporation, are being kept in the office of W.H. Langley Co., its selling agent, in the City of New York, along with the books and records of three other South Carolina corporations, all cotton mills, If it is permissible for said books to be kept in New York, it is equally permissible for them to be carried to any other inaccessible place, no matter how far distant it might be. The South Carolina statute, quoted above, clearly provides that the books of all corporations created under the Code article of which it is a part, "shall be kept open to the inspection of any stockholder at all times." It was obviously intended that such books should be kept open for inspection at the principal office of the domestic corporation in this state, as otherwise the statute would be unenforceable. To hold differently and sanction the keeping of said books in some distant city would, in my opinion, nullify the statute and defeat the plain intent of the Legislature in adopting this provision for the protection of stockholders of domestic corporations.
Therefore, this cause having come on to be heard before me and same having been submitted for my decision on the verified pleadings and the affidavits in support thereof, after argument of counsel and due deliberation in the premises, it is considered, ordered, and adjudged that the prayers of the petition be, and the same are hereby, granted, and a mandamus absolute is issued accordingly, and defendants the Langley Mills and George E. Spofford are hereby ordered to promptly bring into this state and make available for inspection by petitioners at the principal office of the Langley Mills, at Langley, S.C. the ledgers, combination *Page 193 
journals, cashbooks, and stock books now kept in the office of the treasurer at 77 Worth Street in the City of New York; also the records showing the details of the overhead charges such as officers' salaries, directors' fees, interest paid in New York, salaries paid to New York bookkeepers, auditors, etc., and expenses made at the New York office, also all other books and records of the Langley Mills that are now kept outside of the state of South Carolina, which may be necessary for a full and complete understanding of the affairs of said company; and said defendants are hereby ordered and directed to henceforth keep all of said books and records, including contracts, and correspondence files, at the principal office and place of business of said the Langley Mills at Langley, S.C. and same shall there be kept open to the inspection of any stockholder at all times. The return of said books and records to the principal office and place of business of the Langley Mills at Langley, S.C. shall be effected with all reasonable dispatch, consistent with the orderly transfer thereof, but it is ordered that same be completed within 60 days from this date, and extension of time may be allowed defendant upon a proper showing to this Court.
October 9, 1922. The opinion of the Court was delivered by
The appellants make this statement of the case:
"The petition for mandamus herein was served upon defendants, the Langley Mills, manufacturing corporation of South Carolina, and George W. Spofford, its vice president, on June 3, 1921. The petitioners are stockholders in said corporation and asked mandamus to compel defendants to bring certain books and records of the corporation from its office in New York to its office at Langley, S.C. designated in its charter as its principal place of business in South Carolina, so petitioners could make examination of all the books and records at Langley. The corporation kept an office at Langley and one in New York, and certain of its books and records at each of these two offices, and does not dispute petitioners' right as stockholders *Page 195 
to inspection of all its books and records, but requested petitioners to make the desired examination at both said places, Langley and New York. Petitioners insist that it is their right to have all books and records brought to Langley, "for full and convenient inspection by them at Langley. This alleged right is disputed. The hearing was before Judge Rice at Aiken, S.C. on July 6, 1921, upon the verified petition and return, and additional affidavits by both parties, and decree was filed November 9, 1921, ordering defendants to bring from New York to Langley all the books, records, contracts, and correspondence files of the corporation, `to be kept open to inspection of any stockholder at all times' at Langley, S.C. and granted a writ of mandamus to compel performance of the requirements of the decree. The appeal is from this decree."
Let the decree be reported.
Judge Rice held that the right to inspect the books is a legal right; that to require the petitioners to go to New York was practically to deny the right of inspection; that the books kept in New York are necessary to a full exercise of the right of inspection, and ordered the books to be brought to Langley, S.C.
I. The appellants' first contention is that the right to inspect the books is a qualified right, i. e., the inspection must be made at a proper time, in a proper manner, and with a proper motive. Appellants say that is the common law, and our statute has not changed the common law. Our Statute Code, 1912, Vol. I, § 2855, reads:
"The books of any corporation organized under this article shall be open to the inspection of any stockholder atany and all times." (Italics ours.)
It is difficult to see how the full right of inspection could have been more fully and clearly stated. This point cannot be sustained. *Page 196 
II. The appellants claim that his Honor held that the issuance of the mandamus was a legal right, and he should have held that it was a matter of discretion. That his Honor erred in not exercising his discretion. In this appellant is mistaken. His Honor held that the right to inspect is a legal right; that this legal right was denied by keeping the books in New York, and he, therefore, issued the mandamus. His Honor may not have used the term "discretion," but the order shows an exercise, and a very proper exercise, of his discretion.
The judgment is affirmed.
MR. CHIEF JUSTICE GARY concurs.
MR. JUSTICE MARION concurs in the result.