16162

THOMPSON *ET AL.* v. THOMPSON *ET AL.*
(51 S. E. (2d) 169)

*Messrs. Robert McC. Figg, Jr., and Sinkler & Gibbs,* of Charleston, *for Appellants,*

*Messrs. Jos. Fromberg and Paul M. MacMillan,* of Charleston, *for Respondents,*

December 30, 1948.

OXNER, Justice:

This is an appeal by defendants from (1) an order refusing their motion to require plaintiffs to make the complaint more definite and certain by separately stating the causes of

action alleged to have been improperly jumbled, (2) an order overruling a demurrer to the complaint, and (3) a general order of reference.

C. O. Thompson, who was engaged in conducting sight-seeing tours in the City of Charleston, died intestate on November 19, 1936, leaving as his sole heirs at law a widow, Mabel S. Thompson, and four children, namely, Cornelius Owen Thompson, Jr., Allen J. Thompson, Catherine Thompson Lait, and Daisy Thompson McDowell. On December 19, 1936, the widow was appointed administratrix of the estate. She soon discovered that the equipment used in the business of the intestate was heavily mortgaged and the estate was hopelessly insolvent. Shortly thereafter Cornelius Owen Thompson, for the benefit of himself and the other heirs, took over the operation of the business formerly conducted by his father and later purchased most of the assets of the estate. Subsequently these assets were sold and transferred to a corporation known as Gray Line Tours, Inc. which was organized by the widow and Cornelius Owen Thompson. Beginning in April, 1937, the sight-seeing business was carried on by this corporation for the benefit of the widow and children. On September 6, 1938, the parties, being desirous of making a family settlement defining and setting forth their respective rights, entered into a written agreement under which the capital stock of the Gray Line Tours, Inc., consisting of thirty shares, was to be divided by issuing six shares to Cornelius Owen Thompson and five shares, each, to the other three children and the widow, leaving unissued four shares which were to be held as treasury stock. No stock certificates were to be issued, however, unless the parties entered into an agreement whereby any stockholder desiring to sell his stock would first offer it to the other stockholders "at the same price which has been offered to him." It was further agreed that Cornelius Owen Thompson should receive a weekly salary to be fixed by the board of directors and that the net earnings of the corporation should be "distributed annually as follows: One-fourth

(¼) to each Mabel S. Thompson, Catherine C. Lait, Daisy Thompson and Allen Thompson." It was stipulated, however, that there should be no distribution "from the net earnings until the capital surplus fund shall amount to $1000.00 in cash, nor shall there be any distribution in any year unless this fund shall have $1000.00 in cash." Apparently a yacht and speed boat formerly owned by the intestate were not included in the assets sold to this corporation. The agreement provided that the revenues derived from the operation of these boats should be paid to Cornelius Owen Thompson during his lifetime and upon his death the boats were to become the sole and exclusive property of the widow and her children then surviving. It was acknowledged in the agreement that Cornelius Owen Thompson and the widow had properly accounted to the other heirs for all their "acts and doings of the affairs of the said C. O. Thompson, deceased or otherwise", and these two parties were released and discharged "from any further liability thereunto arising."

This action, which was commenced in May, 1948, is brought by three of the children against their brother, Cornelius Owen Thompson, and the following corporations: Gray Line Tours, Inc., Gray Line of Charleston and Orangeburg Transit Company. The widow is not made a party. After setting forth in full the agreement above referred to, plaintiffs allege that by virtue thereof they became stockholders in the Gray Line Tours, Inc.; that the Gray Line of Charleston and the Orangeburg Transit Company are South Carolina corporations which were "formed from the assets and profits of Gray Line Tours, Inc."; and that defendant Thompson has erected and paid for out of the assets and profits of the Gray Line Tours, Inc., a building for the business at a cost of at least $50,000.00, to which he holds title individually. Plaintiffs further allege that during the preceding ten years they received from their brother, Cornelius Owen Thompson, about $800.00 but have been paid no dividends from the Gray Line Tours, Inc., although the earn-

ings of said corporation have annually exceeded the sum of $1000.00.

The remaining paragraphs of the complaint are as follows:

"7. That the Plaintiffs need the income and dividends from the Gray Line Tours, Inc., on which to live, and have demanded from the Defendant, Cornelius Owen Thompson, an accounting and inspection of the books and accounts of Gray Line Tours, Inc., which has been refused, and such accounting and inspection of the books is necessary to determine the exact amount due Plaintiffs, which amount Plaintiffs allege on information and belief is large, which accounting is complicated and difficult covering ten years of transactions, and the amount cannot be ascertained except by the aid of this Honorable Court to require an accounting.

"8. That the Defendant, Cornelius Owen Thompson, as manager and President of Gray Line Tours, Inc., a corporation under the laws of the State of South Carolina, and as President of the other Defendant corporations, has been conducting the said business for the benefit of the Plaintiffs herein, and of Mabel S. Thompson; and they are entitled to all profits from the operation of the said business, including the profits and assets which were invested by the said Cornelius Owen Thompson in the building; and while the legal title to the said properties and assets may be in Cornelius Owen Thompson, he holds the same only as Trustee for these Plaintiffs and Mabel S. Thompson, and the Plaintiffs have no adequate remedy at law to reach said properties and assets, or to collect their claims from the said Cornelius Owen Thompson, without the aid of this Honorable Court.

"9. That the said Cornelius Owen Thompson has failed and refused to give these Plaintiffs any accounting of his actings and doings as their Trustee for the properties of these Plaintiffs, and the Plaintiffs cannot accurately determine the amounts due them, except by the aid of this Honorable Court for an accounting."

The prayer is "(1) For an accounting of the affairs of Gray Line Tours, Inc., and for all investments made from the assets and profits of the said corporation; (2) For an accounting of the actings and doings of the Defendant, Cornelius Owen Thompson, as Trustee for these Plaintiffs; (3) For a judgment for such amounts as this Court finds due to these Plaintiffs by Defendants; (4) For such other and further relief as to this Court seems just and proper."

Plaintiffs contend, and the court below held, that the complaint states only one cause of action which is for an accounting against Cornelius Owen Thompson. They assert in their brief that the action is against their brother "for their interests in the estate of their father as provided for in the agreement"; that "there is no cause of action alleged against the said corporations" which "were made parties to put them on notice that the plaintiffs claimed an interest in their assets"; that the action "is not for dividends, nor for any distribution of corporation property"; and that "they were not interested in earnings or dividends from these corporations except as these were a part of the estate of their father." At another point in their brief the plaintiffs state that "this action is to determine the interests of the plaintiffs in all of the assets which grew out of the family estate, including the corporations, the business building in the name of the defendant, Cornelius Owen Thompson, and any other assets."

The defendants assert that the complaint attempts to set forth at least three separate and distinct causes of action, to wit: "(a) A cause of action in the right of the Plaintiffs individually against the individual defendant, Cornelius Owen Thompson, upon the contract between them; (b) A cause of action in the right of the Plaintiffs individually as stockholders of Gray Line Tours, Inc., against that corporation to collect and obtain an accounting of its earnings and for a distribution thereof; and, (c) A cause of action asserted by the Plaintiffs as stockholders in the right of Gray Line Tours, Inc., a corporation, against the individual Defendant,

Cornelius Owen Thompson, to subject certain property in his name to a trust in favor of such corporation, and for an accounting in respect thereto."

Before undertaking to construe the complaint, it may not be amiss to state certain general principles governing the rights of stockholders to corporate earnings. The surplus profits of a corporation are a part of its assets and do not belong to the stockholders individually. The stockholders have no right to demand such profits until they have been set apart for the payment of dividends. *Gable v. South Carolina Tax Commission,* 189 S. C. 346, 1 S. E. (2d) 244; 13 Am. Jur., Corporations, Section 707. "Corporate earnings and profits remain the property of the company until severed from the assets and distributed as dividends among the stockholders entitled thereto. It is the declaration of the dividend which creates both a dividend itself and the right of the stockholder to demand and receive it." Fletcher Cyc. of Corporations, Permanent Edition, Volume 11, Section 5321, page 785. Of course, "if the directors of a corporation abuse their discretion, and fraudulently or arbitrarily refuse to pay a dividend, when the condition of the corporation makes it their duty to do so, a court of equity will compel them to do so at the suit of a stockholder." Fletcher Cyc. of Corporations, Permanent Edition, Volume 11, Section 5325, page 799. Such an action by a stockholder is one in the right of the corporation.

We have encountered considerable difficulty in seeking to determine upon what theory plaintiffs seek to maintain this action. The allegations of the complaint are vague, indefinite and uncertain. The corporate fiction seems to be entirely ignored. The rights of the plaintiffs under the family agreement are apparently confused with their rights as stockholders.

We shall assume, as the plaintiffs contend, that the complaint states a cause of action against the defendant Thompson individually for an accounting under the family agree-

ment. Defendants concede that there is an effort to state such a cause of action but question the sufficiency of the allegations in this respect. This cause of action is evidently based on circumstances arising subsequent to the agreement since plaintiffs acknowledge therein that the defendant Thompson and their mother had accounted for all their "acts and doings" in connection with the estate of their father. It may be that the effort here is to enforce the provision of the family agreement for division of profits made by the corporation, although this is not entirely clear. In this connection, it may be noted that there is no allegation that demand has been made upon the directors of the Gray Line Tours, Inc., for dividends. Indeed, it does not appear who are the directors of said corporation. Nor is there any showing that plaintiffs have ever sought redress within the corporation.

Another cause of action asserted is to subject property in the individual name of defendant Thompson upon which the building was constructed to a trust in favor of themselves and their mother and to require an accounting of that trust. The complaint does not disclose whether the corporate authorities of the Gray Line Tours, Inc., authorized the use of its assets in the construction of the building mentioned or in forming the other two corporations. It is alleged that the cost of erecting this building was paid for from the assets and profits of Gray Line Tours, Inc. Under these circumstances any trust arising from this transaction would not be in favor of the plaintiffs and their mother but in favor of that corporation.

If Cornelius Owen Thompson unlawfully diverted or misappropriated the assets of the corporation, it was a wrong to the corporation. Ordinarily the right of action for such mismanagement can only be enforced by or, under certain circumstances, in the right of the corporation. Before such an action can be maintained by a stockholder, he must show that he has endeavored to get redress of his grievances within the corporation, or he must show facts

which would justify a court in concluding that an effort for redress within the corporation would be unavailing. *Sigwald v. City Bank*, 82 S. C. 382, 64 S. E. 398; *Browne et al. v. Hammett et al.*, 133 S. C. 446, 131 S. E. 612; *Equitable Trust Co. of Columbia v. Columbia National Bank et al.*, 145 S. C. 91, 142 S. E. 811; *Gary et al. v. Matthews et al.*, 148 S. C. 125, 145 S. E. 702; *Stewart et al. v. Ficken et al.*, 151 S. C. 424, 149 S. E. 164.

It is further alleged in the complaint that the plaintiffs "have demanded from the defendant, Cornelius Owen Thompson, an accounting and inspection of the books and accounts of the Gray Line Tours, Inc., which has been refused, and such accounting and inspection of the books is necessary to determine the exact amount due plaintiffs." These allegations tend to state still another cause of action for an inspection of the books of the corporation. Mandamus is the usual remedy by which such right is enforced. *Self et al. v. Langley Mills et al.*, 123 S. C. 179, 115 S. E. 754. Such right exists at common law and in this State is also secured by statute. Section 7750, Code of 1942.

It clearly appears that the complaint states several causes of action, or at least facts upon which several causes of action might have been stated. Whether the allegations are sufficient to support them is a question we need not now decide. Defendants suggest that we go further and hold that these causes of action cannot be united in the same complaint. But the question of misjoinder can better be determined after the causes of action have been separately stated. Of course, if the plaintiffs desire to set forth only one cause of action, the complaint can be amended by eliminating the others.

After the motion to make the complaint more definite and certain by separately setting forth the several causes of action was refused, defendants, reserving their rights under the motion, demurred to the complaint and thereafter, subject to their motion and demurrer, answered. Since there was

error in refusing the motion, the other matters passed upon by the Court were prematurely determined. Both the order overruling the demurrer and the order of reference are vacated. We express no opinion upon the questions raised by the demurrer or as to plaintiffs' right to an order of reference. These questions should not be determined until it can be seen what issues are raised by the amended pleadings. We only decide on this appeal that the several causes of action should be separately stated. All other questions are left undetermined, including the question as to what extent, if any, the directors of the Gray Line Tours, Inc., are bound by the agreement of the stockholders as to disbursement of the earnings of the corporation.

The order refusing defendants' motion to require the plaintiffs to make their complaint more definite and certain by separately stating the causes of action mentioned is reversed and the other two orders appealed from are vacated. The case is remanded for further proceedings in accordance with the views herein expressed.

BAKER, C. J., and FISHBURNE, STUKES and TAYLOR, JJ., concur.